# 12-471-cr

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

—vs—

LAURA CULVER

*Defendant-Appellant*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## BRIEF FOR DEFENDANT-APPELLANT LAURA CULVER

TERENCE S. WARD
FEDERAL DEFENDER

BY:    RONALD B. RESETARITS
ASSISTANT FEDERAL DEFENDER
ATTORNEY FOR DEFENDANT-APPELLANT,
  LAURA CULVER
265 CHURCH STREET, SUITE 702
NEW HAVEN, CONNECTICUT 06510
(203) 498-4200

To be argued by:
Ronald B. Resetarits

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE ISSUES PRESENTED.. . . . . . . . . . . . . . . . . . . . vi

STANDARD OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      POINT I

          THE SENTENCE IS PROCEDURALLY UNREASONABLE
          BECAUSE THE DISTRICT COURT BASED ITS
          SENTENCE ON ITS OWN UNSUPPORTED THEORY
          THAT THE GROWING USE OF FACEBOOK WILL RESULT
          IN THE PRODUCTION OF MORE CHILD
          PORNOGRAPHY THUS NECESSITATING A LONGER
          PRISON TERM IN ORDER TO DETER SUCH
          FUTURE FACEBOOK USERS.. . . . . . . . . . . . . . . . . . . . . . . . 11

      POINT II

          THE DISTRICT COURT'S SENTENCE OF 96 MONTHS'
          IMPRISONMENT WAS SUBSTANTIVELY
          UNREASONABLE WHERE THE COURT PLACED TOO
          MUCH WEIGHT ON GENERAL DETERRENCE AND
          THE SERIOUSNESS OF THE OFFENSE (USING ITS
          UNSUPPORTED FACEBOOK THEORY), AND NOT
          ENOUGH WEIGHT ON THE OTHER FACTORS. . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE PER FED. R. APP. P. 32(a)(7)(C). . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**CASES**             **PAGES**

Gall v. United States,
  552 U.S. 38,128 S. Ct. 586 (2007)............................... vii, 11

United States v. Booker,
  543 U.S. 220, 125 S. Ct. 738 (2005)............................... vii

United States v. Cavera,
  550 F.3d 180 (2d Cir. 2008) ...................................... 18

United States v. Cossey,
  632 F.3d 82 (2d Cir. 2011). .................................... vii, 12

United States v. Donnaann Dambro,
  Docket No. 3:03cr248(EBB)................................... 20, 21

United States v. Dorvee,
  616 F.3d 174 (2d Cir. 2010). ..................................... 17

United States v. Fleming,
  397 F.3d 95 (2d Cir. 2005). ...................................... vii

United States v. Guitana Jones,
  3:01cr216(AHN). ............................................... 21

United States v. Renee Jones,
  3:06cr245(AVC).................................................. 21

United States v. Juwa,
  508 F.3d 694 (2d Cir. 2007). .................................... 11

United States v. Matthews,
  773 F.2d 48 (3d Cir. 1985). ..................................... 11

United States v. Rattoballi,
  452 F.3d 127 (2d Cir. 2006). ................................. vii, 18

## STATUTES AND OTHER AUTHORITIES

Title 18, United States Code, Section 2251. ......................... v, 5

Title 18, United States Code, Section 3006A......................... 1

Title 18, United States Code, Section 3231. ......................... v, 1

**CASES**                                                 **PAGES**

Title 18, United States Code, Section 3553. . . . . . . . . . . . . . . . . . . . . .  passim

Title 18, United States Code, Section 3742. . . . . . . . . . . . . . . . . . . . . . . . . . . v

Title 28, United States Code, Section 1291. . . . . . . . . . . . . . . . . . . . . . . . . . v

**MISCELLANEOUS**

United States Sentencing Guidelines, Section 5K1.1. . . . . . . . . . . . . . . . 6, 7, 8

## PRELIMINARY STATEMENT

This is an appeal from the sentence of 96 months in prison and three years of supervised release imposed on Laura Culver by the Honorable Warren W. Eginton, Senior United States District Judge, District of Connecticut, on January 30, 2012.

## STATEMENT OF JURISDICTION

On April 2, 2009, pursuant to a written plea agreement, Ms. Culver pled guilty to a one-count Information charging her with production of child pornography in violation of 18 U.S.C. § 2251(a).  JA 87.[1]  She was sentenced by Judge Eginton on January 30, 2012 to a term of imprisonment of 96 months followed by a three-year term of supervised release.  JA 76-79.  The district court had jurisdiction pursuant to 18 U.S.C. § 3231.

Ms. Culver filed a timely Notice of Appeal on February 3, 2012.  JA 84. This appeal is from the final judgment of the district court that disposes of all claims with respect to all parties.  This Court has jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

---

[1]All citations to the Joint Appendix will be in the format "JA" unless citing to the presentence report in which case the paragraph number will also be provided.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the district court's sentence was procedurally unreasonable where the judge relied on his own unsupported theory that the continued growth of Facebook – a phenomenon irrelevant to the facts of the instant case – will result in greater child pornography production, thus requiring a longer prison sentence to deter such Facebook predators.

2. Whether the district court placed too much weight on general deterrence and the seriousness of the offense, and not enough weight on the other factors, thus rendering the sentence substantively unreasonable.

## **STANDARD OF REVIEW**

Just as this Court has instructed district courts to adjust their sentencing procedures in accordance with *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), it has assigned itself the responsibility of conducting a searching reasonableness review. *United States v. Fleming*, 397 F.3d 95, 99 (2d Cir. 2005). The sentencing review process has two distinct parts.

First, this Court must ensure that the district court committed no significant procedural error. *Gall v. United States*, 552 U.S. 38, 51 (2007). Relevant to this case, procedural error occurs when the sentence is based on clearly erroneous facts. *United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2011) (citing *Gall* at 51).

Second, the reviewing court must "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51. Substantive reasonableness depends on whether the "length of the sentence is reasonable in light of the factors outlined in 18 U.S.C. § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 132 (2d Cir. 2006).

IN THE UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

DOCKET NO. 12-471-cr

_____

UNITED STATES OF AMERICA,

Appellee,

-vs-

LAURA CULVER,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
_____

**BRIEF FOR DEFENDANT-APPELLANT
LAURA CULVER**
_____

## STATEMENT OF THE CASE

Laura Culver pled guilty to a one-count Information charging her with production of child pornography pursuant to a written plea agreement. She was sentenced by Judge Eginton on January 30, 2012 to a term of imprisonment of 96 months followed by a three-year term of supervised release. JA 76-79. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. The Office of the Federal Defender for the District of Connecticut, through the undersigned counsel, served as court-appointed counsel under the Criminal Justice Act (18 U.S.C. § 3006A) for Ms. Culver throughout the proceedings outlined above and continues to represent her in this appeal.

## STATEMENT OF FACTS

The facts of this case are indeed disturbing. Beginning in 2001, over the course of approximately four months, Laura Culver allowed her then-boyfriend, Edgardo Sensi, to sexually abuse her eight year old daughter, S.C.[2] JA 18-19. As the government stated in its sentencing memorandum, "the victim was subjected to repeated brutal and sadomasochistic abuse over a period of time by [Sensi] and some of the most disturbing conduct occurred while Culver was present. Moreover, Culver was aware that the conduct was being videotaped and permitted a permanent record of the harm to be created . . . Culver was directly involved in grooming the victim, breaking down her defenses, and sexually abusing the victim." *Id.*

Now 18 years old, S.C., remarkably, is thriving. JA 94-95, ¶ 38. She has begun college on a scholarship, having distinguished herself in high school as a straight-A student, soccer-team captain, church-group leader, and Homecoming Queen. JA 128-30. And, as unlikely as it may seem, those who know her attribute her success in part to her mother's care and influence.[3] JA 94-95, ¶ 38; 117; 128-30. As A.H., the foster parent and cousin of Ms. Culver, described in her letter to the district court, S.C. has survived so well during her

---

[2]During the sentencing hearing there was some dispute regarding the period of abuse. However, Ms. Culver asserts that it spanned April 2001 through August 2001, and then occurred again over the course of a weekend in April 2002 when S.C. was left in the care of Sensi while Ms. Culver was out of town working. JA 50; 89-90, ¶ 13.

[3]By way of exemplifying Ms. Culver's love for S.C., A.H. pointed out that Ms. Culver showed "sensitivity and restraint" by not sending too many letters to S.C. (they were first reviewed by A.H.) or expecting too much from S.C. JA 128-30. And in Ms. Culver's letters to A.H., Ms. Culver's main concern was for S.C.'s "feelings and wishes, not her own." *Id.*

mother's incarceration in some measure because of the "values that [Ms. Culver] instilled in her." *Id.* Probation's assessment is telling: S.C., he writes, "is a vibrant, successful young woman, who is healed and has forgiven her mother." JA 100, ¶ 74.

Friends and family describe Ms. Culver as compassionate, positive, optimistic, loyal, and loving. JA 117; 128-43. And although she lived in a middle-class home, and had educational opportunities, Ms. Culver's upbringing was difficult emotionally. Ms. Culver was a victim of verbal abuse as a child by her alcoholic father, who made fun of her weight, and verbally abused her mother. JA 91-92, ¶ 28; 100, ¶ 73. When she was six years old, Ms. Culver recalls drunken confrontations between her father and mother culminating in a turbulent divorce. JA 92, PSR ¶ 29. Throughout childhood, Ms. Culver was constantly teased by schoolmates about her weight and, as a result, she tried to compensate by performing tasks for her classmates to ingratiate herself. JA 92, PSR ¶ 30. In fact, Ms. Culver has struggled with being overweight (at times morbidly so) her entire life. JA 118. Ms. Culver has always had extremely low self-esteem. *Id.*

In 1987, Ms. Culver married Ezra Culver, and the couple had one child, S.C., the victim in this case. JA 93, ¶ 35. Ezra was unfaithful to Ms. Culver during their short marriage and abandoned Ms. Culver when S.C. was only an infant. *Id.* He has never supported S.C. JA 118. Ms. Culver did the best she could to obtain good jobs in order to support herself and S.C. JA 118; 133-35. In 2000, Ms. Culver and S.C. moved to Connecticut after Ms. Culver obtained a better-paying job. At her new job, she met Sensi who, unbeknownst to her,

was a pedophile who targeted her after seeing a photograph of S.C., then eight years old, on Ms. Culver's desk. JA 89, ¶ 13.

As the PSR points out, Ms. Culver's father's verbal abuse "planted the seeds of inadequacy, self doubt and self consciousness that pervaded her marriage to [Ezra Culver] who, like her father, made her feel like she couldn't do anything right, including getting pregnant with her daughter whom he rejected. This background explains her attraction to Sensi, who is 'tall, dark, and handsome,' and romanced Ms. Culver with talk of marriage and family life." JA 100, ¶ 73; 89, ¶ 13. Using threats of breaking off the relationship, Sensi convinced Ms. Culver to allow him to abuse the victim, and to assist him in teaching S.C. how to have sexual contact with Sensi. JA 89-90, ¶ 13; 100, ¶ 73. Shortly after the last episode of abuse – the one where Ms. Culver was out of town on business – Ms. Culver stopped Sensi from any more contact with S.C.; this was done approximately six years before first Sensi and then Ms. Culver were arrested. JA 118.

In September 2008, Sensi was arrested and the tapes were discovered. JA 89, ¶ 11. In October 2008, Ms. Culver was arrested. JA 85. After her arrest, Ms. Culver immediately began cooperating with the government. JA 174, 176, 178. She ultimately spent over three years confined to a jail while waiting for Sensi's case to be resolved. JA 177. Ms. Culver spent her time productively while detained pre-sentence. In fact, she obtained so many certificates (they measured an inch thick) that it was impractical to attach them to her sentencing memorandum. JA 123-24; 145-52. And for a good portion of her time at the jail, Ms. Culver worked full-time as a seamstress (a position she created)

mending clothing and, in turn, saving the institution a significant sum of money. JA 123-24. Prior to that position, she worked as a kitchen worker, math tutor, and pod runner. *See* JA 146-52 (Ms. Culver's summary of jail programs and classes, and correspondence courses, she took and completed). In sum, Ms. Culver completed eight Wyatt educational programs; five Wyatt educational classes; two courses with NewLife Behavior Ministries (26 parts); seven courses with the Pentecostal Conservative School of the Bible (23 units); six courses through the Catholic Home Study Service; seven courses through the American Bible Academy; numerous courses with the Crossroads Bible Institute; numerous courses with Source of Light Ministries International; 24 units with the Emmaus Correspondence School; and two units with Global University. *See id.*

On April 2, 2009, Ms. Culver pled guilty to a one-count information charging her with Production of Child Pornography in violation of 18 U.S.C. § 2251(a). JA 85. The PSR contained a Guidelines analysis under the 2001 Manual in order to avoid an *ex post facto* violation due to the large increase in the recommended prison term found in the current Manual. JA 90, PSR ¶ 15. The Guidelines calculation started with a base offense level of 27. JA 90, PSR ¶ 16. Four levels were added because the victim was under the age of 12, and two more levels were added because the victim was Ms. Culver's own child. JA 91, PSR ¶ 17. After a three-level reduction for acceptance of responsibility, she had a total offense level of 30. JA 91, ¶ 24. With her placement in Criminal History Category I, her Guidelines range was 97-121 months compressed to 120-121 months due to the 10-year mandatory minimum penalty. JA 91, ¶¶ 23-

26; 97, PSR ¶¶ 47-48.  The PSR also stated, based on the seriousness of the offense and the dramatic increase in Guidelines range, that the sentencing judge might consider whether an upward departure might be warranted.  JA 99-101, ¶¶ 60-70, 75.  The court ultimately declined to upwardly depart.  JA 24-26.

Prior to sentencing, the government filed a motion for a downward departure pursuant to Section 5K1.1, detailing Ms. Culver's substantial assistance in the investigation and prosecution of Sensi.  JA 174-79.  As the government explained in its motion, Ms. Culver provided timely, truthful, complete, and reliable information; she testified in the grand jury; and she waited 39 months in a jail for Sensi's case to be resolved, all the while willing and prepared to testify at Sensi's trial and sentencing.  JA 177.  Indeed, Ms. Culver's cooperation and willingness to testify at Sensi's trial was a factor that led Sensi to plead guilty.  JA 176.  And perhaps most importantly, Ms. Culver's cooperation allowed the government to prosecute Sensi without having to call S.C. as a witness.  JA 177.  Ms. Culver's testimony would have established the identity of S.C., the length of the abuse, the age of S.C. when she was being abused, how the grooming process worked, and where the sexual abuse and filming took place.  JA 177-78.  Furthermore, Ms. Culver's information established venue in Connecticut so that Sensi, who was living in Florida at the time of his arrest, could be charged and prosecuted in Connecticut.  JA 177.

In sum, Ms. Culver's cooperation assisted the government in establishing that Sensi was sexually abusing children for over 20 years.  JA 175.  Ms. Culver's cooperation not only provided detailed information regarding

Sensi's abuse of S.C., but provided details regarding suspected abuse of other minors including specific dates on which the abuse occurred and allowing the government to establish a separate interstate nexus for one of the production counts.  JA 177.

Both parties also filed sentencing memoranda.  JA 17-21; 112-52. Ms. Culver argued for the standard 50% reduction for substantial assistance in the District of Connecticut (from 120 months to 60 months), and pointed out that any inclination to sentence Ms. Culver to a prison term greater than that should be negated by her low risk of recidivism, her history and characteristics, and similar sentences handed down in the district for similar crimes. JA 119-25. The government emphasized the seriousness of the offense and the need to adequately deter others, arguing that five years would be an insufficient sentence.  JA 17-21.

A sentencing hearing was held on January 30, 2012.  JA 22-75; 153-73. The hearing began with a closed session to discuss the nature of Ms. Culver's assistance to the government.  JA 153-73.  Defense counsel emphasized the solidity of the government's motion for a downward departure and noted that while no promises had been made, the usual and customary reduction in the District of Connecticut is 50% of the low-end of the Guidelines range.  JA 155-58.  The district court agreed:  "You are correct.  I've spoken to many of my colleagues many times about this, and the takeoff point, I think the Government's always recognized, on a 5K, is 50 percent.  In other words, we start with the 50 percent and go upward or downward from there, and very seldom go downward below that, but we have gone upward from it."  JA 158.

When asked by the judge to characterize the nature of Ms. Culver's assistance, the prosecutor said:

> I think that Mr. Resetarits is correct. We phrased it as important assistant [sic] that was provided in this case . . . I don't dispute any of Mr. Resetarits' comments with respect to the type of information that was provided, and the value it had to the government. I will also second the fact that as a prosecutor who does a lot of this work, there is an enormous value for me, when someone is in a position not to have to put a child victim on the stand, and so that is particularly significant for me, and we include that in the 5K letter.

JA 159-60. The government clarified as well that, under the cooperation agreement reached with Ms. Culver, the government was not advocating for any particular sentence. JA 161. During the in-court portion of the hearing that followed, and after ruling that an upward departure was unwarranted, the court accepted the factual findings of the PSR. JA 27-28.

Then, although the district court noted that Ms. Culver had a lot of "redeeming features" and "she was as much a victim as she was a perpetrator," having been "taken down the wrong road by a very evil individual ("a super seducer")," JA 35, 38, 54, the court repeatedly emphasized the harmfulness of Facebook, one of the worst things "that's ever come down the pike" as the court put it. JA 37. Although, in fact, the instant case had no connection to Facebook (no computer, let alone social networking site, was even used during the offense conduct), in the court's mind there was a *direct* connection to Facebook. First, in its closed session discussing Ms. Culver's cooperation and whether the 2001 or 2011 Guidelines Manual should be used, the court stated, "[Ms. Culver] deserves a break . . . she's correct that [the 2011 Guidelines] apply here, but I think you're correct in pointing out that 2011 shows what's happened since, and

how bad it's become.  In fact, *with **Facebook** it's going to get worse, not better*."  JA 166 (emphasis added).  Then, in open court, in responding to defense counsel's remarks that there appeared to be very few cases like the instant case where a female was charged with production of child pornography, the judge stated,

> your comment that there are very few cases . . . I wish that were going to continue, but my own reaction, which I think is shared by a lot of my colleagues, is that the United States Attorney's Office, and certainly, Mr. Holder, the United States Attorney General, has emphasized this, that we're going to get more of these cases. ***Facebook** is one of the worst things, in my judgment, that's ever come down the pike*.  It's not talking about people the ages of this victim, it's talking about the teenagers, whose *parents will have great difficulty in controlling access and limiting access* to them *because of **Facebook***, and I think the United States and all of us on the bench are going to face more and more of these cases, and *I hope this guy who invented **Facebook** is enjoying all his money because I think he's going to hurt a lot of people*, and I hope, and Mr. Fein probably joins me in hoping I'm wrong, but I think he's going to get more of these cases.

JA 37-38 (emphasis added).  During the government's argument at sentencing, the prosecutor seized on the district court's focus on its unsupported perception of Facebook's connection to the production of child pornography and as being relevant to the case when stating:  "this is a crime that is somewhat driven through technology.  We're seeing more of it."  JA 45.  At the end of the government's presentation, the court asked the prosecutor, "so you're saying really, you're emphasizing the aspect of 3553 that is important to the court and . . . that's general deterrence, and that's the heart of what your statement is?"  And the prosecutor responded, "yes, Your Honor."  JA 49.  Later, the court explained that it chose not to grant the standard 50% reduction for substantial

assistance because of the government's arguments at sentencing (in other words, the government's focus on general deterrence).  JA 49, 70.

Then, in explaining its sentence, the court stated, "the sentence I will hand down is a sentence of 8 years, 96 months.  I would be very tempted to go, as Judge Burns did, to a sentence of six years, but I'm persuaded by the Government's arguments, that *what's happened here in the last few years especially*, is very important, on the seriousness of the crime."  JA 55 (emphasis added).  Moreover, after counsel raised concerns about a possible *ex post facto* violation, the court responded:

> [The government] did not ask the court to be governed by [the new, more severe] Guidelines, and the court was not governed – influenced by those Guidelines.  *What the court is influenced by, and I think I'm entitled to be influenced by that in my consideration of what's happened since 2001, is **Facebook**, and things like it, and society has changed.*  I don't think that's ex post facto, that's conditions which you consider at the time of sentencing . . .

JA 68-69 (emphasis added).

## SUMMARY OF THE ARGUMENT

First, the district court committed procedural error when it based its sentence on its own unsupported theory (hereinafter "Facebook theory") that the continued growth of Facebook will result in greater child pornography production.  The court stated that it had strongly considered a six-year sentence but was convinced that the growing proliferation of Facebook necessitated a more severe sentence in order to deter Facebook users, and other social network users, who would be considering using such sites to victimize children.  Because the court's theory had no support in the record, and in fact Facebook had no connection to the instant offense, and yet was so central to the court's decision

-10-

to sentence Ms. Culver to two additional years of imprisonment, the court committed procedural error requiring a remand.

Second, Ms. Culver's sentence of 96 months is substantively unreasonable because the court placed too much weight on the need for the sentence to deter others and to reflect the seriousness of the offense (again, using the court's own unsupported Facebook theory to analyze those factors) while placing not enough weight on the other § 3553(a) factors such as the history and characteristics of the defendant; the defendant's recidivism risk; and the need for the sentence to justly punish, promote respect for the law, and avoid unwarranted sentencing disparities.

## ARGUMENT

## POINT I

### THE SENTENCE IS PROCEDURALLY UNREASONABLE BECAUSE THE DISTRICT COURT BASED ITS SENTENCE ON ITS OWN UNSUPPORTED THEORY THAT THE GROWING USE OF FACEBOOK WILL RESULT IN THE PRODUCTION OF MORE CHILD PORNOGRAPHY THUS NECESSITATING A LONGER PRISON TERM IN ORDER TO DETER SUCH FUTURE FACEBOOK USERS

Although district courts enjoy considerable discretion to consider all relevant facts in determining a sentence, "there are distinct limits to this discretion, and they include a defendant's due process right to be sentenced based on accurate information." *United States v. Juwa*, 508 F.3d 694, 700 (2d Cir. 2007). Procedural error occurs when the district court selects a sentence "based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007). *See also United States v. Matthews*, 773 F.2d 48, 51-52 (3d Cir. 1985) ("Factual matters considered as a basis for sentence must have some minimal

indicium of reliability beyond mere [assertion] and must either alone or in the context of other available information, bear some rational relationship to the decision to impose a particular sentence.") (internal quotations and citations omitted).

In *United States v. Cossey*, 632 F.3d 82, 86-88 (2d Cir. 2011), this Court remanded where the district court sentenced Cossey based on its own unsupported conclusion that he would re-offend due to what it found to be a genetic trait Cossey possessed that caused him to be predisposed to view child pornography. This Court explained, "while a defendant's propensity to re-offend is a proper consideration under § 3553(a)(2)(C), the court below relied on this single factor, which it linked to its unsupported belief that Cossey was prevented from controlling his behavior due to a genetic inability to do so." *Id.* at 87. Analyzing *Cossey* under plain error review, the Court concluded,

> It is undisputed that it would be impermissible for the court to base its decision of recidivism on its unsupported theory of genetics . . . . Where a district court relies on its own scientific theories of human nature to sentence a defendant, as it does here, a finding of plain error is warranted . . . It is uncontroversial to conclude that a sentencing decision that relies on factual findings that were unsupported in the record, and thus could not possibly have been established by a preponderance of the evidence, seriously affects the fairness, integrity, and public reputation of judicial proceedings.

*Id.* at 88.

Like in *Cossey*, here, too, the district court had its own similarly unsupported (and irrelevant) theory – that the increasing use of Facebook will inevitably cause an increase in sexual predation. The court relied on this theory in deciding Ms. Culver's sentence, ultimately choosing a higher prison term on this basis. *See* JA 55 ("I would be very tempted to go, as Judge Burns did, to a

sentence of six years, but I'm persuaded by the Government's arguments, that *what's happened here in the last few years especially*, is very important, on the seriousness of the crime") (emphasis added); JA 68-69 ("the court was not governed [by the 2011] Guidelines. *What the court is influenced by, and I think I'm entitled to be influenced by that in my consideration of what's happened since 2001, is **Facebook**, and things like it, and society has changed*.") (emphasis added).

Put another way, the court's Facebook theory became central to its analysis of the only two § 3553(a) factors the court based its sentence on, namely the need for the sentence to "afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), and "to reflect the seriousness of the offense," § 3553(a)(2)(A). *See* JA 63-64 ("but I think as you emphasize, it's not specific deterrence, what we're looking at is general deterrence, and the general deterrence is very important, and frankly, that's why I went to eight instead of six. I was really considering, very strongly, six, but you persuaded me that maybe eight is appropriate for the seriousness of what we're doing here"). This was procedural error; a remand is required.

Indeed, a look at the record clearly shows the court's repeated reference to its unsupported, and irrelevant, Facebook theory and how that theory became central to the court's ultimate sentencing decision. Initially, in its closed session discussing Ms. Culver's cooperation and whether the 2001 or 2011 Guidelines Manual should be applied, the court stated, "[Ms. Culver is] . . . correct that [the 2001 Guidelines] apply here, but I think [the government is] correct in pointing out that 2011 shows what's happened since, and how bad it's become. In fact,

*with **Facebook** it's going to get worse, not better.*"  JA 166 (emphasis added).
Then, in open court, in responding to defense counsel's remarks that there
appeared to be very few cases like the instant case, the judge stated,

> your comment that there are very few cases . . . I wish that were
> going to continue, but my own reaction, which I think is shared by
> a lot of my colleagues, is that the United States Attorney's Office,
> and certainly, Mr. Holder, the United States Attorney General, has
> emphasized this, that we're going to get more of these cases.
> ***Facebook** is one of the worst things, in my judgment, that's ever
> come down the pike*.  It's not talking about people the ages of this
> victim, it's talking about the teenagers, whose *parents will have
> great difficulty in controlling access and limiting access* to them
> *because of **Facebook***, and I think the United States and all of us on
> the bench are going to face more and more of these cases, and *I
> hope this guy who invented **Facebook** is enjoying all his money
> because I think he's going to hurt a lot of people*, and I hope, and
> Mr. Fein probably joins me in hoping I'm wrong, but I think he's
> going to get more of these cases.

JA 37-38 (emphasis added).

During the government's argument at sentencing, the prosecutor seized
on the court's preoccupation with its Facebook theory, stating:  "this is a crime
that is somewhat driven through technology.  We're seeing more of it."  JA 45.
Then, at the end of the government's presentation, the court asked the
prosecutor, "so you're saying really, you're emphasizing the aspect of 3553 that
is important to the court and . . . that's general deterrence, and that's the heart
of what your statement is?"  JA 49.  And the prosecutor responded, "yes, Your
Honor."  *Id.*  Later, the court explained that it decided not to give Ms. Culver the
full, standard 50% reduction for substantial assistance because of the
government's argument at sentencing (in other words, its focus on general
deterrence).  JA 70.

In explaining its sentence, the court stated, "the sentence I will hand down is a sentence of . . . 96 months. I would be very tempted to go, as Judge Burns did, to a sentence of six years, but I'm persuaded by the Government's arguments, that *what's happened here in the last few years especially*, is very important, on the seriousness of the crime." JA 55 (emphasis added). A moment later he added:

> "I think the real – what Congress did was to set forth what we as a federal court should do under 3553. So that's what I really use as my own takeoff point, and I try to observe all of the elements of 3553, and some of them are very important to the Defendant, for treatment of the Defendant, but I think as you emphasize, *it's not specific deterrence, what we're looking at is general deterrence, and the general deterrence is very important, and frankly, that's why I went to eight instead of six. I was really considering, very strongly, six, but you persuaded me that maybe eight is appropriate for the seriousness of what we're doing here.*"

JA 63-64 (emphasis added). Lastly, after counsel raised concerns about a possible *ex post facto* violation, the court responded:

> [The government] did not ask the court to be governed by [the new, more severe] Guidelines, and the court was not governed–influenced by those Guidelines. *What the court is influenced by, and I think I'm entitled to be influenced by that in my consideration of what's happened since 2001, is **Facebook**, and things like it, and society has changed.* I don't think that's ex post facto, that's conditions which you consider at the time of sentencing . . .

JA 68-69 (emphasis added).

In sum, the court erred for three reasons. First, Facebook and other social networking programs are irrelevant to this case. Sensi neither identified nor met Ms. Culver and S.C. through Facebook; he never communicated with Ms. Culver and S.C. through Facebook; and he never distributed the videos he made through Facebook. In fact, Facebook did not even exist at the time of the

offense; it was launched in 2004, two years later. *See http://en.wikipedia.org/wiki/Facebook.* Sensi first noticed S.C. when he saw a picture of her on Ms. Culver's desk at their place of work. JA 89, PSR ¶13. He then made tapes with a video camera and stored the tapes at his home. JA 88, ¶ 6. In short, the instant case has no connection whatsoever to Facebook, no connection to any other social networking site, and, for that matter, no connection to the use of a computer.

Second, the court's Facebook theory was completely unsupported by the record. There was simply no evidence presented at sentencing supporting the court's proposition that more Facebook use will result in more child pornography production. By way of a quick test showing the fallacy of the court's theory, if one were to search Westlaw in the database "allfeds" using, first, "child pornography," and, second, "child pornography & facebook," one would obtain 7,633 hits and 33 hits, respectively. In short, there are presently very few reported child pornography cases that involve any connection to Facebook. This completely undermines the court's theory.

Lastly, as demonstrated by a review of the record and as stated above in this argument, the court's unsupported and irrelevant theory about Facebook's inevitable cause of greater child victimization became central to the court's analysis of the two sentencing factors that it focused on, namely, the need for the sentence to deter others, and the need for the sentence to reflect the seriousness of the offense. While there was no record evidence regarding the present and future dangers of Facebook, that theory plainly motivated the court's perceived need for an eight-year sentence, as opposed to a six-year or five-year sentence.

A remand is thus required.  *See United States v. Dorvee*, 616 F.3d 174, 183-84 (2d Cir. 2010) (the district court improperly assumed, despite medical testimony to the contrary, that Dorvee was likely to sexually assault a child, "a view unsupported by the record evidence yet one that plainly motivated the court's perceived need 'to protect the public from further crimes of the defendant'").

## POINT II

**THE DISTRICT COURT'S SENTENCE OF 96 MONTHS'
IMPRISONMENT WAS SUBSTANTIVELY
UNREASONABLE WHERE THE COURT PLACED TOO
MUCH WEIGHT ON GENERAL DETERRENCE AND THE
SERIOUSNESS OF THE OFFENSE (USING ITS
UNSUPPORTED FACEBOOK THEORY), AND NOT
ENOUGH WEIGHT ON THE OTHER FACTORS**

Substantive reasonableness depends on whether the "length of the sentence is reasonable in light of the factors outlined in 18 U.S.C. Section 3553(a)." *Rattoballi*, 452 F.3d at 132. When reviewing for substantive reasonableness, this Court should consider "whether a factor relied on by a sentencing court can bear the weight assigned to it under the totality of circumstances in the case." *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008).

Here, the court placed an unreasonably great amount of weight on general deterrence and what it referred to as the "seriousness of what we're doing here." *See* JA 63-64 ("but I think as you emphasize, it's not specific deterrence, what we're looking at is general deterrence, and the general deterrence is very important, and frankly, that's why I went to eight instead of six. I was really considering, very strongly, six, but you persuaded me that maybe eight is appropriate for the seriousness of what we're doing here"). And, as argued in Point I, the court's analysis of those two factors was based on its own theory that Ms. Culver must be punished more harshly to deter future Facebook predators.

At the same time, the court failed to give proper weight to several of the other § 3553(a) factors: the history and characteristics of the defendant; the defendant's recidivism risk; and the need for the sentence to justly punish,

-18-

promote respect for the law, and avoid unwarranted sentencing disparities. *See* U.S.C. § 3553(a).

With respect to the history and characteristics of Ms. Culver, *see* 18 U.S.C. § 3553(a)(1), she provided significant and substantial assistance to the government; she had no prior or subsequent misconduct; she had a strong work history; she otherwise provided a great deal of love and nurturing to S.C.; and she worked hard to rehabilitate herself while incarcerated pre-sentence for over three years. JA 30-35; 87, ¶ 5; 94-95, ¶ 38; 117-18; 123-24; 128-43; 145-52; 159-60; 174-79.

With respect to specific deterrence, *see* 18 U.S.C. § 3553(a)(2)(B) and (C), significantly there was no dispute that Ms. Culver had an extremely low propensity for re-offending due to her age, lack of prior record, work history, and the circumstances of the offense. *See* JA 48 (Prosecutor: "We don't believe she did this before. We don't believe she's going to do this again. In other words, individual deterrence is certainly not the issue.") The district court agreed. JA 49; 63-64.

Turning to the need for the sentence to justly punish Ms. Culver, *see* 18 U.S.C. § 3553(a)(2)(A), since Ms. Culver had never served a day in jail prior to her arrest on the instant offense, less time was needed to punish her than someone with prior periods of incarceration. Furthermore, the more than three years she spent confined at a federal jail while the government waited to see if she would be needed to testify at a trial or sentencing hearing was indeed difficult time. JA 121; 157. It is undisputed that confinement is much more onerous at a jail than at a low-security facility where Ms. Culver has been

designated to. *Id*. The jail must accommodate all security levels and there is less opportunity for work, programming, and movement. *Id*. Her confinement thus worked a greater punishment than if she had been sentenced and designated to a low-security facility in a more-customary time frame. *Id*.

Further, when considering the need for the sentence to promote respect for the law, *see id*., a sentence less than eight years should have been selected. Respect for the law is promoted when cooperators receive similar reductions for similar cooperation. There was no dispute in this case that the customary and standard reduction in the District of Connecticut is 50% of the low end of the Guidelines range. JA 158. In fact, because of so many years of such a practice, clients have come to rely on such a prediction when deciding on whether to cooperate. JA 121-22; 125. And yet in this case, a less than 50% reduction was given by the sentencing court (Ms. Culver only received a 20% reduction) based on the court's unsupported theory that a stiffer sentence must be given to deter future Facebook users from producing child pornography. This type of analysis tends to lesson respect for the law, particularly where Facebook had absolutely no connection to the facts of the instant case.

Lastly, when considering the need for the sentence to avoid unwarranted sentencing disparities, *see* 18 U.S.C. § 3553(a)(6), the court had before it information about a nearly identical District of Connecticut case, *United States v. Donnaann Dambro*, Docket No. 3:03cr248(EBB), in which a woman received a six-year sentence. JA 124-25. And although the court acknowledged that it had strongly considered sentencing Ms. Culver to the same sentence, *see* JA 55, the court tacked on two more years, again, in order to send a message to future

Facebook users whom the court assumed, with no factual basis, would be the most likely to repeat Ms. Culver's crime, a crime that did not involve Facebook or even a computer. *See* JA 63-64.

In order to assist the district court in avoiding unwarranted sentencing disparities, Probation researched prior cases in the District to determine whether any had similar fact patterns. JA 124-25; 162-65. Probation only found two. *Id.* First, in the *Dambro* case, the defendant filmed herself engaged in sexual acts with her 13 year old daughter for the benefit of Dambro's boyfriend. *Id.* Dambro also is seen on tapes coaching her daughter on how to perform oral sex on Dambro's boyfriend. *Id.* Dambro cooperated as well. *Id.* Her Guidelines range was 78-97 compressed to 120 months due to the same 10-year mandatory minimum sentence in operation in this case. *Id.* Dambro was also a first-offender; she was sentenced to six years.[4] *Id.* In yet another similar case, Renee Jones, a non-cooperator, who conspired with her boyfriend to abuse Jones's daughter, then under 18 years old, received a sentence of five years. *See United States v. Renee Jones*, Docket No. 3:06cr245(AVC). JA 125.

In sum, the court placed too much weight on general deterrence and the seriousness of the offense, relying on its Facebook theory and increasing the

---

[4]The second case that Probation found was *United States v. Guitana Jones*, 3:01cr216(AHN). JA 124-25; 162-65. In that case, Jones brought her daughter and niece, both under the age of 12, to have sex with then Waterbury Mayor Philip Giordano on multiple occasions and initially coached the two young girls on how to perform the oral sex. JA 125; 162-65. Jones was in Criminal History Category V with a higher base offense level yielding a Guidelines range of 240 months. *Id.* She also cooperated and was sentenced to 10 years. *Id.* However, due to the same criminal history category, Guidelines range, and very similar offense conduct, the Dambro case is the better case to compare to the instant one. JA 35-36.

prison term from six to eight years accordingly, and placed too little weight on the other sentencing factors. The sentence was thus substantively unreasonable requiring a remand for a new sentencing hearing.

## CONCLUSION

For the foregoing reasons, Ms. Culver respectfully requests that this Court remand this case for re-sentencing.

Respectfully submitted,

THE DEFENDANT-APPELLANT,
LAURA CULVER

TERENCE S. WARD
FEDERAL DEFENDER

Dated: August 27, 2012      /s/ Ronald b. Resetarits
                                      Ronald B. Resetarits
                                      Assistant Federal Defender
                                      265 Church Street, Suite 702
                                      New Haven, CT 06510
                                      Phone: (203) 498-4200
                                      Bar no.: ct26519
                                      Email: ronald.resetarits@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that two copies of the foregoing Brief and Appendix have been mailed to Krishna Patel, Assistant United States Attorney, United States Attorney's Office, 1000 Lafayette Boulevard, 10th Floor, Bridgeport, CT 06604 on this 27th day of August 2012.

/s/ Ronald B. Resetarits
Ronald B. Resetarits
Assistant Federal Defender

## <u>CERTIFICATION PER FED. R.APP. P. 32(a)(7)(C)</u>

This is to certify that the foregoing brief complies with the 14,000 word limitation requirements of Fed. R. App. P. 32(a)(7)(B), in that the brief is 6,493 calculated by the word processing program to contain approximately words, exclusive of the Table of Contents, Table of Authorities and this Certification.

Dated:  August 27, 2012

<u>/s/ Ronald B. Resetarits</u>
Ronald B. Resetarits
Assistant Federal Defender
Attorney for Laura Culver