# 12- 471-cr

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

—vs—

LAURA CULVER,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## JOINT APPENDIX

TERENCE S. WARD
FEDERAL DEFENDER

BY:  RONALD B. RESETARITS
ASSISTANT FEDERAL DEFENDER
ATTORNEY FOR DEFENDANT-APPELLANT,
 LAURA CULVER
265 CHURCH STREET, SUITE 702
NEW HAVEN, CONNECTICUT 06510
(203) 498-4200

## TABLE OF CONTENTS

### Joint Appendix

DOCKET SHEETS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-5

INFORMATION (4/2/2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

PLEA AGREEMENT LETTER (4/2/2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-16

GOVERNMENT'S SENTENCING MEMORANDUM (1/27/2012). . . . . . . . . . . . . . . . . . . 17-21

TRANSCRIPT OF SENTENCING HEARING (1/30/2012). . . . . . . . . . . . . . . . . . . . . . . . . 22-75

JUDGMENT (1/30/2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76-79

NOTICE OF APPEAL (2/3/2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

### Documents Filed Under Seal

PRESENTENCE REPORT (1/13/2012 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85-106

ADDENDUM TO THE PRESENTENCE REPORT (1/13/2012 ) . . . . . . . . . . . . . . . . . . 107-111

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING (1/25/2012 ). . . . . . . . . 112-152

TRANSCRIPT OF SEALED PORTION OF SENTENCING HEARING (1/30/2012). . . 153-173

GOVERNMENT'S MEMORANDUM IN SUPPORT OF MOTION FOR DOWNWARD
DEPARTURE PURSUANT TO U.S.S.G. 5K1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 174-179

STATEMENT OF REASONS (1/30/2012 ) (previously included in Joint Appendix). . . . . . 80-83

-i-

APPEAL, CLOSED, EFILE

# U.S. District Court
## United States District Court for the District of Connecticut (New Haven)
## CRIMINAL DOCKET FOR CASE #: 3:09-cr-00077-WWE-1

Case title: USA v. Culver

Date Filed: 04/02/2009
Date Terminated: 02/02/2012

Assigned to: Judge Warren W. Eginton

### Defendant (1)

**Laura Culver**
*TERMINATED: 02/02/2012*
*also known as*

*TERMINATED: 02/02/2012*

represented by **Ronald B. Resetarits**
Federal Public Defender's Office - NH
265 Church St., Suite 702
New Haven, CT 06510-7005
203-498-4200
Fax: 203-498-4207
Email: ronald.resetarits@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender*

### Pending Counts

SEXUAL EXPLOITATION OF
CHILDREN(Production of Child
Pornography)
(1)

### Disposition

Defendant plead guilty to count 1 of the
Information. Defendant shall be
imprisoned for a total of 96 months.
Upon release defendant shall be on
supervised release for a total of 3 years
with mandatory, Standard and special
Conditions. Defendant shall
immediately pay $100.00 Special
Assessment.

### Highest Offense Level (Opening)

Felony

### Terminated Counts

None

### Disposition

### Highest Offense Level (Terminated)

None

**Complaints**                                    **Disposition**

Defendant produced child pornography
in violation of Title 18 United States
Code Section 2251(a)& (b) 18:2251.F

---

**Plaintiff**

**USA**                         represented by   **Alina Reynolds**
                                                 U.S. Attorney's Office-BPT
                                                 915 Lafayette Blvd. Room 309
                                                 Bridgeport, CT 06604
                                                 203-696-3000
                                                 Fax: 203-579-5550
                                                 Email: alina.reynolds@usdoj.gov
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Krishna R. Patel**
                                                 U.S. Attorney's Office-BPT
                                                 915 Lafayette Blvd. Room 309
                                                 Bridgeport, CT 06604
                                                 203-696-3000
                                                 Fax: 203-579-5550
                                                 Email: krishna.patel@usdoj.gov
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Nora R. Dannehy**
                                                 U.S. Attorney's Office-HFD
                                                 450 Main St. Room 328
                                                 Hartford, CT 06103
                                                 860-947-1101
                                                 Fax: 860-240-3291
                                                 *TERMINATED: 12/27/2010*
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 04/02/2009 | 1 | INFORMATION as to Laura Culver (1) count(s) 1. (Gutierrez, Y.) (Entered: 04/13/2009) |
| 04/02/2009 |   | Attorney update in case as to Laura Culver. Attorney Ronald B. Resetarits for Laura Culver added. (Gutierrez, Y.) (Entered: 04/13/2009) |
| 04/02/2009 | 2 | WAIVER OF INDICTMENT by Laura Culver (Gutierrez, Y.) (Entered: 04/13/2009) |

| | | |
|---|---|---|
| 04/02/2009 | 3 | ORAL MOTION for Intern to Appear by USA as to Laura Culver. (Gutierrez, Y.) (Entered: 04/13/2009) |
| 04/02/2009 | 4 | PLEA AGREEMENT as to Laura Culver (Gutierrez, Y.) (Entered: 04/13/2009) |
| 04/02/2009 | 9 | Minute Entry for proceedings held before Judge Warren W. Eginton: Waiver/Plea Hearing as to Laura Culver held on 4/2/2009; Plea entered by Laura Culver (1) Guilty Count 1. granting in open court 3 Motion for Intern to Appear ; ( Sentencing set for 6/19/2009 10:00 AM in Courtroom Three-Annex, 915 Lafayette Blvd., Bridgeport, CT before Judge Warren W. Eginton) 40 minutes(Court Reporter Maria Corriette.) (Gutierrez, Y.) (Entered: 04/14/2009) |
| 04/02/2009 | 10 | ORDER OF REFERRAL TO PROBATION FOR PRESENTENCE INVESTIGATION AND REPORT as to Laura Culver. Signed by Judge Warren W. Eginton on 4/2/09. (Gutierrez, Y.) (Entered: 04/14/2009) |
| 04/02/2009 | 11 | ELECTRONIC FILING ORDER as to Laura Culver - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER. Signed by Judge Warren W. Eginton on 4/2/09. (Gutierrez, Y.) (Entered: 04/14/2009) |
| 04/16/2009 | 12 | SEALED TRANSCRIPT of Proceedings as to Laura Culver held on 4/02/2009 before Judge Warren W. Eginton. Court Reporter: Maria Corriette. Type of Hearing: Waiver/Plea. (Payton, R.) (Entered: 04/23/2009) |
| 06/11/2009 | 13 | MOTION to Seal Motion by Laura Culver. (Gutierrez, Y.) (Entered: 06/17/2009) |
| 06/11/2009 | 14 | SEALED MOTION re: Sentencing by Laura Culver. (Gutierrez, Y.) (Entered: 06/17/2009) |
| 06/18/2009 | 15 | ORDER granting 13 Motion to Seal as to Laura Culver (1). Signed by Judge Warren W. Eginton on 6/18/09. (S-Cepler, C.) (Entered: 06/18/2009) |
| 06/18/2009 | 16 | ORDER granting 14 Sealed Motion as to Laura Culver (1). Signed by Judge Warren W. Eginton on 6/18/09. (S-Cepler, C.) (Entered: 06/18/2009) |
| 06/29/2009 | 17 | WAIVER of Sentencing Time by Laura Culver (Resetarits, Ronald) (Entered: 06/29/2009) |
| 03/18/2010 | 18 | WAIVER of Sentencing Time by Laura Culver (Resetarits, Ronald) (Entered: 03/18/2010) |
| 07/07/2010 | 19 | NOTICE OF E-FILED CALENDAR as to Laura Culver: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. Status Conference set for 7/9/2010 2:30 PM in Courtroom Three-Annex, 915 Lafayette Blvd., Bridgeport, CT before Judge Warren W. Eginton. (Candee, D.) (Entered: 07/07/2010) |
| 10/19/2011 | 20 | ORDER scheduling sentencing as to Laura Culver for January 30, 2012 at 10:00 a.m. Signed by Judge Warren W. Eginton on 10/19/11. (Ladd-Smith, I.) (Entered: 10/19/2011) |

| | | |
|---|---|---|
| 10/19/2011 | | Set Deadlines/Hearings as to Laura Culver: Sentencing set for 1/30/2012 10:00 AM before Judge Warren W. Eginton, pursuant to 20 Order (Blough, B.) (Entered: 11/02/2011) |
| 12/21/2011 | 21 | PRESENTENCE INVESTIGATION REPORT (Draft Report) *(SEALED - government and defense counsel)* as to Laura Culver. (available to USA, Laura Culver) (Attachments: # 1 Information, # 2 Plea Agreement, # 3 Letter to USPO, # 4 Financial Statement)(Lopez, R.) (Entered: 12/21/2011) |
| 01/13/2012 | 22 | PRESENTENCE INVESTIGATION REPORT (Final Report) *(SEALED - government and defense counsel)* as to Laura Culver. (available to USA, Laura Culver) (Attachments: # 1 Information, # 2 Plea Agreement, # 3 Letter to USPO, # 4 Financial Statement, # 5 Addendum, # 6 PSR Objections)(Lopez, R.) (Entered: 01/13/2012) |
| 01/13/2012 | 23 | Sealed Sentencing Recommendation: as to Laura Culver (Lopez, R.) (Entered: 01/13/2012) |
| 01/18/2012 | 24 | SEALED MOTION - by USA (Candee, D.) (Entered: 01/23/2012) |
| 01/25/2012 | 27 | MOTION to Seal Document. (Candee, D.) (Entered: 01/27/2012) |
| 01/25/2012 | 28 | Sealed Document. (Candee, D.) (Entered: 01/27/2012) |
| 01/26/2012 | 25 | ORDER taking under advisement 24 Sealed Motion as to Laura Culver (1). Signed by Judge Warren W. Eginton on 1/26/12. (Ladd-Smith, I.) (Entered: 01/26/2012) |
| 01/27/2012 | 26 | SENTENCING MEMORANDUM by USA as to Laura Culver (Patel, Krishna) (Entered: 01/27/2012) |
| 01/30/2012 | 29 | ORDER granting 27 Motion to Seal as to Laura Culver (1). Signed by Judge Warren W. Eginton on 1/30/12. (Ladd-Smith, I.) (Entered: 01/30/2012) |
| 01/30/2012 | 30 | Minute Entry for proceedings held before Judge Warren W. Eginton:Sentencing as to Laura Culver held on 1/30/2012 Total Time: 1 hours and 17 minutes(Court Reporter Baldwin)(Barrille, J.) (Entered: 02/03/2012) |
| 02/02/2012 | 31 | JUDGMENT as to Laura Culver (1), Count 1, Defendant plead guilty to count 1 of the Information. Defendant shall be imprisoned for a total of 96 months. Upon release defendant shall be on supervised release for a total of 3 years with Mandatory, Standard and Special Conditions. Defendant shall immediately pay $100.00 Special Assessment. Signed by Judge Warren W. Eginton on 2/1/2012. (Candee, D.) (Entered: 02/03/2012) |
| 02/02/2012 | | JUDICIAL PROCEEDINGS SURVEY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link: |

| | | |
|---|---|---|
| | | https://ecf.ctd.uscourts.gov/cgi-bin/Dispatch.pl?crsurvey (Candee, D.) (Entered: 02/03/2012) |
| 02/03/2012 | 32 | NOTICE OF APPEAL by Laura Culver re 31 Judgment. (Resetarits, Ronald) Modified on 2/6/2012 TO REMOVE FILING FEE INFORMATION FROM TEXT (Oliver, T.). (Entered: 02/03/2012) |
| 02/03/2012 | | Transmission of Notice of Appeal as to Laura Culver to US Court of Appeals re 32 Notice of Appeal - Final Judgment (Oliver, T.) (Entered: 02/06/2012) |
| 04/11/2012 | 33 | MOTION to Seal Document by Laura Culver. (Candee, D.) (Entered: 04/12/2012) |
| 04/11/2012 | 34 | Sealed Document. (Candee, D.) (Entered: 04/12/2012) |
| 04/13/2012 | 35 | ORDER granting 33 Motion to Seal. Signed by Judge Warren W. Eginton on 4/13/12. (Ladd-Smith, I.) (Entered: 04/13/2012) |
| 05/02/2012 | 36 | SEALED ORDER as to Laura Culver. Motion enclosed in 34 Sealed Document is granted. Signed by Judge Warren W. Eginton on 5/2/12. (Ladd-Smith, I.) (Entered: 05/02/2012) |
| 05/29/2012 | 37 | SEALED TRANSCRIPT of Proceedings as to Laura Culver held on 1/30/12 before Judge Warren E. Eginton. Court Reporter: Steve Bowles. Type of Hearing: Sealed Hearing. (Pesta, J.) (Entered: 05/29/2012) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/20/2012 08:29:03 | | |
| **PACER Login:** | fp0049 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:09-cr-00077-WWE |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**FILED**

2009 APR -2 ⊃ 3: 44

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 3:09cr 77 (ωωε) |
| | : | |
| | : | Violation: |
| LAURA CULVER | : | |
| | : | 18 U.S.C. § 2251(a) |
| | | (Production of Child Pornography) |
| | : | |

### INFORMATION

The United States Attorney charges:

### COUNT ONE – Production of Child Pornography
### (18 U.S.C. § 2251(a))

In or about 2001, in the District of Connecticut and elsewhere, **LAURA CULVER**, the defendant herein, did employ, use, persuade, induce, entice, and coerce a minor, M.V.#1, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, which visual depictions: (i) the defendant knew and had reason to know were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce and (ii) were actually transported in interstate and foreign commerce.

In violation of Title 18, United States Code, Section
2251(a).

NORA R. DANNEHY
ACTING UNITED STATES ATTORNEY

ALINA P. REYNOLDS
SUPERVISORY ASSISTANT US ATTORNEY

KRISHNA R. PATEL
ASSISTANT UNITED STATES ATTORNEY

2

7

 **U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Brien McMahon Federal Building*          *(203) 696-3000*
*915 Lafayette Boulevard, Room 309*
*Bridgeport, Connecticut 06604*          *Fax (203) 579-5575*

April 2 , 2009

Ronald Resetarits
Assistant Federal Public Defender
Office of the Federal Public Defender
2 Whitney Avenue, Suite 300
New Haven, CT 06510

> Re:   United States v. Laura Culver
> Criminal No.

Dear Attorney Resetarits:

This letter confirms the plea agreement entered into between your client, Laura Culver (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal matter.

## THE PLEA AND OFFENSE

Laura Culver agrees to waive her right to be indicted and to plead guilty to a one-count Information charging her with production of child pornography, in violation of Title 18 U.S.C. § 2251(a). She understands that to be guilty of this offense the following essential elements of the offense must be satisfied:

1.   The defendant employed, used, persuaded, induced, enticed or coerced the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

2.   The victim was a minor; and

3.   The visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means.

## THE PENALTIES

The offense set forth in Count One of the Information carries a mandatory minimum penalty of ten (10) years of imprisonment and a maximum penalty of twenty (20) years of

8

imprisonment.  In addition, under 18 U.S.C. § 3583(b), the Court may impose a period of supervised release of not more than 3 years, to begin at the expiration of any term of imprisonment imposed.  The defendant understands that should she violate any condition of the supervised release during its term, she may be required to serve a further term of imprisonment of up to two years of incarceration with no credit for the time already spent on supervised release.

The parties also stipulate and agree that the Court should impose the following Special Conditions of Supervised Release:

1. The defendant shall participate in mental health treatment as direct by the Court or the United States Probation Office; and

2. The defendant shall comply with any applicable federal, state and local sex offender registry.

The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571.  Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100.00 on each count of conviction.  The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

Finally, unless otherwise ordered, should the Court impose a fine of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of a fine amount not paid within 15 days after the judgment date, pursuant to 18 U.S.C. § 3612(f).  Other penalties and fines may be assessed on the unpaid balance of a fine pursuant to 18 U.S.C. §§ 3572 (h) - (i) and § 3612(g).

#### Restitution

In addition to the other penalties provided by law, the Court may also order that the defendant make restitution under 18 U.S.C. § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution.  Restitution is payable immediately unless ordered otherwise by the Court.

#### Forfeiture

Defendant understands and agrees that by virtue of her plea of guilty she waives any rights or cause of action to claim that she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

## THE SENTENCING GUIDELINES

1.  <u>Applicability</u>

2

**9**

The defendant understands that although application of the United States Sentencing Guidelines is not mandatory, they are advisory and the Court will normally be required to consider any applicable Guideline range, as well as other factors enumerated in 18 U.S.C. § 3553(a), to tailor an appropriate sentence in this case. *See United States v. Booker*, 543 U.S. 220 (2005).

The defendant expressly understands and agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Officer who prepares the pre-sentence investigation report. The defendant further understands that she has no right to withdraw her guilty plea if her sentence or the Guideline application is other than she anticipated.

    2.    Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's Adjusted Offense Level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, the Government intends to file a motion with the Court pursuant to § 3E1.1(b) recommending that the Court reduce defendant's Adjusted Offense Level by one additional level based on the defendant's prompt notification of her intention to enter a plea of guilty. This recommendation is conditioned upon the defendant's full, complete, and truthful disclosure to the Probation Office of information requested, of the circumstances surrounding her commission of the offense, of her criminal history, and of her financial condition by submitting a complete and truthful financial statement. In addition, this recommendation is conditioned upon the defendant timely providing complete information to the Government concerning her involvement in the offense to which she is pleading guilty. The defendant expressly understands that the Court is not obligated to accept the Government's recommendation on the reduction.

The Government will not make this recommendation if the defendant engages in any acts which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (Sentencing Guideline § 3E1.1); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (Sentencing Guideline § 3C1.1); or (3) constitute a violation of any condition of release. Moreover, the Government will not make this recommendation if the defendant seeks to withdraw her plea of guilty. The defendant expressly understands that she may not withdraw her plea of guilty if, for the reasons explained above, the Government does not make this recommendation.

    3.    Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation which is attached to and made a part of this plea agreement. The defendant understands that this stipulation does not purport to set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant expressly understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

3

4.      The Government's Guideline Calculation

        The Government believes that even though Culver's criminal conduct occurred in 2001 and 2002, that the Guideline Manual in effect at the time of her sentencing should be used to calculate the defendant's applicable guidelines.  The defendant disagrees and will argue that the 2001 Guideline Manual should apply.  Using the current (2008) Guideline Manual, the Government calculates the defendant's applicable guidelines to be a term of imprisonment of up to life.  In light of the statutory maximum sentence of 20 years of incarceration, *see* U.S.S.G. §5G1.1(c), the Sentencing Guidelines specify a term of 20 years of imprisonment, a fine range of $25,000 to $250,000 (U.S.S.G. § 5E1.2(c)(3), a term of supervised release of 3 years and a $100 special assessment.  The defendant believes using the 2001 Guideline Manual, that the defendant's applicable guideline range is 97-121 months of incarceration.  In light of the mandatory minimum, the guideline range becomes 120-121 months of incarceration.

        5.      Waiver of Right to Appeal or Collaterally Attack Sentence

        The defendant acknowledges that under certain circumstances she is entitled to appeal her conviction and sentence pursuant to 18 U.S.C. § 3742.  It is specifically agreed that the defendant will not appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence of imprisonment imposed by the Court if that sentence does not exceed seven years of imprisonment, a term of supervised release of life, and a fine of $20,000, even if the Court imposes such a sentence based on an analysis different from that specified.  The defendant expressly acknowledges that she is knowingly and intelligently waiving her appellate rights.

        6.      Information to the Court

        The Government expressly reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case.  Moreover, it is expressly understood that the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to its file, with the exception of grand jury material.

**WAIVER OF RIGHTS**

        1. Waiver of Right to Indictment

        The defendant understands that she has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that she committed the offense set forth in the Information before an indictment could be returned. The defendant expressly acknowledges that she is knowingly and intelligently waiving her right to be indicted.

        2. Waiver of Trial Rights and Consequences of Plea

        The defendant understands that she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent her.

4

The defendant understands that she has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against her, the right not to be compelled to incriminate herself, and the right to compulsory process for the attendance of witnesses to testify in her defense.  The defendant understands that by pleading guilty she waives and gives up those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that if she pleads guilty, the Court may ask her questions about each offense to which she pleads guilty, and if she answers those questions falsely under oath, on the record, and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making false statements.

3. Waiver of Statute of Limitations

The defendant understands and agrees that should the conviction following defendant's plea of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution.  The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

4. Waiver of Right To Post-Conviction DNA Testing of Physical Evidence

The defendant understands that the Government has various items of physical evidence in its possession in connection with this case that could be subjected to DNA testing.  The defendant further understands that following conviction in this case, she could file a motion with the Court to require DNA testing of physical evidence pursuant to 18 U.S.C. § 3600 and § 3600A in an attempt to prove her innocence.  The defendant fully understands her right to have all the physical evidence in this case tested for DNA, has discussed this right with her counsel, and knowingly and voluntarily waives her right to have such DNA testing performed on the physical evidence in this case.  Defendant fully understands that because she is waiving this right, the physical evidence in this case will likely be destroyed or will otherwise be unavailable for DNA testing in the future.

**ACKNOWLEDGMENT OF GUILT; VOLUNTARINESS OF PLEA**

The defendant acknowledges that she is entering into this agreement and is pleading guilty freely and voluntarily because she is guilty.  The defendant further acknowledges that she is entering into this agreement without reliance upon any discussions between the Government and her (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges her understanding of the nature of the offense to which she is pleading guilty, including the penalties

5

provided by law. The defendant also acknowledges her complete satisfaction with the representation and advice received from her undersigned attorney. The defendant and her undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant expressly acknowledges that she is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights she may have to seek reasonable attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges and understands that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to her with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant understands and acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving her.

## COLLATERAL CONSEQUENCES/ SEX OFFENDER REGISTRATION AND NOTIFICATION ACT

The defendant further understands that she will be adjudicated guilty of each offense to which she has pleaded guilty and will be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Bureau of Prisons or the Probation Office will collect a DNA sample from the defendant for analysis and indexing. The defendant also understands that the Government reserves the right to notify any state or federal agency by which she is licensed, or with which she does business, as well as any current or future employer of the fact of her conviction.

The defendant acknowledges that she has been advised and understands that under the Sex Offender Registration and Notification Act, federal law requires that she must register and keep the registration current in each of the following jurisdictions: where she resides; where she is an employee; and where she is a student. She understands that the requirements for registration include providing her name, her residence address, and the names and addresses of any places where she is or will be an employee or a student, among other information. She further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which she resides, is an employee, or is a student not later than three business days after any change of her name, residence, employment, or student status. The defendant has been advised, and understands, that failure to comply with these obligations subjects her to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment or both.

6

13

**SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH**

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of her participation in the criminal offense which forms the basis of the Information in this case.

The defendant understands that if, before sentencing, she violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw her plea of guilty.

**NO OTHER PROMISES**

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, and signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

NORA R. DANNEHY
ACTING UNITED STATES ATTORNEY

/S/
KRISHNA R. PATEL
ASSISTANT UNITED STATES ATTORNEY

The defendant certifies that she has read this plea agreement letter and its attachment or has had it read or translated to her, that she has had ample time to discuss this agreement and its attachments with counsel and that she fully understands and accepts its terms.

/S/ _____          4/2/2009 _____
LAURA CULVER                      Date
The Defendant

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client, who advises me that she understands and accepts its terms.

/S/ _____   _____   4/2/2009 _____
RONALD RESETARITS, ESQ.                       Date
Attorney for the Defendant

7

14

STIPULATION OF OFFENSE CONDUCT

The defendant Laura Culver and the Government stipulate and agree to the following offense conduct that gives rise to the defendant's agreement to plead guilty to the Information:

The defendant did use minor, M.V.#1 who was a minor under the age of twelve, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, which visual depictions were produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce.

Beginning in or about April 2001 and continuing until 2002, Culver collaborated with Edgardo Sensi to film M.V.#1, who was approximately eight years old.  The video-tapes contain sessions during which Culver and Sensi enticed M.V. to engage in illegal sex acts with them.

The equipment used by Culver and Sensi to videotape M.V. #1 and to store the videotapes had been mailed, shipped, and transported in interstate and foreign commerce. Moreover, during one incident where M.V.#1 was filmed engaging in illegal sex acts with Sensi and Culver in Rhode Island,  that the video-tapes depicting the illegal sex acts did travel  in interstate commerce to Connecticut.

The written stipulation above is incorporated into the preceding plea agreement.  It is understood, however, that the defendant and the Government reserve their right to present additional relevant offense conduct to the attention of the Court in connection with sentencing.


/s/                                                        /s/
LAURA CULVER                             KRISHNA R. PATEL
The Defendant                                   Assistant United States Attorney


/s/
RONALD RESETARITS, ESQ.
Attorney for the Defendant

8

15

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A. The order of restitution may include:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense, the order of restitution shall require the defendant to:

   A. Return the property to the owner of the property or someone designated by the owner; or

   B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

   The greater of -

   (I) the value of the property on the date of the damage, loss, or destruction;  or

   (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

   A. pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

   B. pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

   C. reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant.  In addition to the court ordered restitution, the court may order that the conditions of its order of restitution be made  a condition of probation or supervised release.  Failure to make restitution as ordered may result in a revocation of probation, or a modification of the conditions of supervised release, or in the defendant being held in contempt under 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. See 18 U.S.C. § 3614. The Court may also order that the defendant give notice to any victim(s) of her offense under 18 U.S.C. § 3555.

9

16

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :

v.                                :     No. 3:09CR00077 (WWE)

LAURA CULVER                      :     January 27, 2012

### SENTENCING MEMORANDUM OF THE UNITED STATES

The United States submits this brief sentencing memorandum in connection with the

January 30, 2012 sentencing of defendant Laura Culver.  Because the facts of this matter have

been fully set forth in the PSR and because the Court has now viewed a summary video

depicting Culver's crimes, the Government will not provide a recitation of the facts.

### Legal Standard

The Supreme Court clarified the continuing role of the Sentencing Guidelines and the

scope of the sentencing court's discretion in United States v. Booker, 543 U.S. 220 (2005).

Booker makes clear that this Court must consider both the sentencing factors set forth in 18

U.S.C. Section 3553(a), and the Sentencing Guidelines in fashioning a reasonable sentence.  Id.

at 764.  While the Sentencing Guidelines are no longer mandatory following Booker, they must

still be considered in determining the appropriate sentence.  The Second Circuit has recognized

the continuing relevance of the Sentencing Guidelines following Booker in determining an

appropriate sentence:

> [I]t is important to bear in mind that Booker/ Fanfan and section 3553(a) do more than
> render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a
> sentencing judge. Thus, it would be a mistake to think that, after Booker/Fanfan, district judges
> may return to the sentencing regime that existed before 1987 and exercise unfettered discretion
> to select any sentence within the applicable statutory maximum and minimum. On the contrary,

the Supreme Court expects sentencing judges faithfully to discharge their statutory obligation to "consider" the Guidelines and all of the other factors listed in section 3553(a). We have every confidence that the judges of this Circuit will do so, and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice. United States v. Crosby, 397 F.3d 103, 113-14 (2d Cir. 2005).

Under the non-mandatory Guideline regime established by Booker and Crosby, the sentencing judge is empowered to make the factual findings necessary for determining what the recommended Guideline sentence is in a particular case. Crosby, 397 F.3d at 113 ("the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence"). Using the current sentencing guidelines, Culver's guideline sentence is life – not 120-121 months that Culver claims using the 2001 Guidelines. In light of the statutory maximum sentence of twenty years, the guideline calculation is properly 20 years. The Government has filed a 5K and section 3553(e) motion for a downward departure given Culver's cooperation in this case.    Therefore, the Court is not bound by the mandatory minimum sentence.

### A. The Nature and Circumstances of the Offense.

The Supreme Court has consistently recognized that the protection of children is a paramount governmental and societal interest and the permanent record of abuse created by child pornography creates a pervasive harm that revictimizes a child. *See New York v. Ferber*, 458 U.S. 747, 757 (1982) ("the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."). Culver was directly involved in the sexual abuse of the child in this case. The victim was subjected to repeated brutal and sado-masochistic abuse over a period of time by the co-conspirator and some of the most disturbing conduct occurred while Culver was present. Moreover, Culver was aware that the conduct was being video-taped and permitted a permanent record of the harm to be created. The crimes committed

18

against the victim in this case are among the most abhorrent crimes committed by a member of our society. Culver was directly involved in grooming the victim, breaking down her defenses, and sexually abusing the victim.

### B. History and Characteristics of the Defendant.

Unlike so many defendants who come before this Court, Culver appears to have had the support of family, friends, an education and a career. The difficulties that she discusses in the PSR simply do not and cannot explain or excuse her conduct in this case.

### C. The Sentence Must Promote Respect for the Law

The sentence in this case must reflect the seriousness of the offense committed by Culver. Given the severe neglect and the severe abuse inflicted on this victim, the punishment imposed must reflect the seriousness of the offense committed by Culver. As depicted in portions of the video-tapes, Culver and Sensi question the victim about whether the victim is telling anyone about what they are doing to her and instruct the victim not to say anything. Culver used the natural trust that the victim would have towards her and violated it by engaging in and permitting the victim to be severely victimized. It is very important that Culver finally understand that she must respect the laws of our society. Given her complete disregard and contempt for our laws, the punishment imposed in this case should promote respect for our laws.

### D. The Court Should Consider General Deterrence

One of the factors the Court must consider in imposing sentence is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). A substantial and appropriate prison sentence for such conduct can serve as a powerful deterrent against the commission of these abhorrent crimes. While the Government does not believe that Culver is likely to engage in conduct in the future, the Court's sentence should send a clear and strong message of general deterrence. General deterrence serves an important function, and its

impact should not be underestimated particularly here where the victim is was a young child when she was being abused. A five-year sentence proposed by Culver is simply not sufficient and sends the wrong message. This is a truly heinous crime and sentence should recognize the severity of the offense.

### E. Sensi Has Earned A Sentence Comparable to Those Imposed on Similarly Situated Offenders.

The Sentencing Guidelines were promulgated, in part, to minimize disparities in federal sentences. Although those Guidelines are no longer mandatory, the importance of eliminating sentencing disparities remains an important factor which the Court must separately consider pursuant to 18 U.S.C. § 3553(a)(7). The Guidelines here serve as a good marker for the appropriate sentence. While Culver discusses other cases in her memorandum, it is important to note that each case is different and if this Court wishes to avoid unwarranted disparities, the sentencing guidelines serve that function. In *US v. Ortiz*, the Second Circuit adopted the D.C. Circuit's "nuanced" decision in *US v. Turner*, which concluded that if "using the [amended] Guidelines created a substantial risk that [the defendant's] sentence was more severe," the Ex Post Facto Clause would be violated. In *Ortiz*, the Court found no violation because the district judge imposed a substantially below-Guidelines sentence and the Court found that the district court would have given the same sentence regardless of the Guidelines range.

Respectfully submitted,

DAVID B. FEIN
UNITED STATES ATTORNEY
/S/
KRISHNA R. PATEL
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. CT 24433
915 Lafayette Boulevard
Bridgeport, CT 06604
(203) 696-3000

CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/S/_____
KRISHNA R. PATEL
ASSISTANT UNITED STATES ATTORNEY

1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,  .   Case No. 3:09-CR-00077
                      .   (WWE)
        Plaintiff,   .
                      .   Bridgeport, Connecticut
   v.              .   January 30, 2012
                      .
LAURA CULVER,         .
                      .
        Defendant.   .
. . . . . . . . . . . . .

SENTENCING HEARING
BEFORE THE HONORABLE WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:    Office of the U.S. Attorney
                    By:  DAVID FEIN, USA
                        KRISHNA PATEL, AUSA
                    141 Church Street
                    New Haven, CT 06510

For the Defendant:    Federal Public Defender
                    By:  RONALD B. RESETARITS, ESQ.
                    265 Church Street
                    Suite 702
                    New Haven, CT 06510

For Probation:        U.S. Probation Office
                    By:  SUSPO RAYMOND LOPEZ
                    157 Church Street
                    New Haven, CT 06510

Electronic Court
Recorder Operator:    MS. SANDRA J. BALDWIN

Proceedings recorded by electronic sound recording.
Transcript prepared by transcription service.
_____

BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083

2

1    (Proceedings commenced at 10:41 a.m.)

2          THE COURT: Okay. This is United States of

3    America v. Laura Culver, 3:09-77.

4          She's before me for sentencing.

5          She's represented by Attorney Resetarits, and

6    Krishna Patel is the Assistant United States Attorney.

7          You want to swear the Defendant.

8    (The Defendant is Sworn.)

9          THE COURT: All right.

10         You are Laura Culver?

11         THE DEFENDANT: Yes.

12         THE COURT: All right.

13         You're represented by Attorney Resetarits.

14         You satisfied with his representation of you?

15         THE DEFENDANT: Yes, Your Honor.

16         THE COURT: He's a very experienced criminal

17   defense attorney. He's done a very good job for you.

18         You have not partaken of any drugs or

19   alcoholic beverages today?

20         THE DEFENDANT: No, sir.

21         THE COURT: You understand you're before me

22   for sentencing, for a violation of the laws of the

23   United States?

24         THE DEFENDANT: Yes, Your Honor.

25         THE COURT: All right.

23

3

1        Mr. Resetarits, you satisfied she understands
2  the nature of these proceedings and can work with you
3  today on this?
4        MR. RESETARITS:  Yes, Your Honor.
5        THE COURT:  All right.
6        You been over the Presentence Investigation
7  Report, which was very well done, and I know there were
8  a lot of things that you took up with Mr. Lopez about
9  it.
10        Is there anything that is still outstanding
11  that I ought to rule upon before we ask if you accept
12  the Presentence Report?
13        MR. RESETARITS:  The issue of whether an
14  upward departure under the Guidelines, under 5K2.8.
15  That was a departure that Mr. Lopez suggested that the
16  Court might want to consider, and I objected by way of
17  letter, and citing case law, and I also addressed it in
18  my sentencing memorandum.
19        Mr. Lopez also suggested the Court may want
20  to consider an upward variance under the 3553(a)
21  factors, which I can address in my presentation, but
22  with respect to whether an upward departure is
23  warranted, and I don't believe the Government is
24  advocating for it, but the Presentence Report raises
25  it.

24

4

1        I would ask for a ruling on that, Your Honor.

2        THE COURT:  Well, I think you're entitled to

3    a ruling on it and we'll do that.

4        The Pre, at page 4 and page 5, sets forth the

5    elements under the Sentencing Guidelines Manual for

6    2001, November 1, 2001, which, as pointed out by Mr.

7    Lopez, is a tremendous advantage to the Defendant

8    because if you were to sentence her under November

9    2011, you would be way up there at 240 months.  You'd

10   be up there for 20 years instead of 10.

11       So what Mr. Lopez has recommended, in

12   accordance with the computation at pages 4 and 5, which

13   has, and we'll go through that because I'm supposed to

14   in due course, and when I get to the sentencing time,

15   you start with a Base Offense Level of 27 for

16   production of the child pornography, and you have a

17   four-level increase, which is not the four-level

18   increase you were just addressing, but is one because

19   the victim was so much younger than twelve years of

20   age, so you add two more for the victim's mother.

21       You point out several things about

22   recommendations in the Pre, that are covered under the

23   Guidelines in previous other sections, but Mr. Lopez

24   has taken that all into account, and he ends up with an

25   adjusted Offense Level of 33, and has a three-level

5

1   reduction, which is quite common in these -- All these
2   cases we seem to end up with a three-level reduction
3   because they seem to be justified, and they always are
4   provided for in the Guidelines.

5   So we're down to 30, with a Criminal History
6   Category of I, and I always emphasize to defendants
7   that their good conduct is as helpful to them as the
8   bad conduct is adverse to them, and a Criminal History
9   Category of I is a credit and is important when you
10  compare it with a Criminal History Category of VI,
11  which is a career criminal offender, and there's quite
12  a bit of difference.

13  So, she gets a break by being under 2001
14  Guidelines with a Criminal History Category of I, and
15  that's what's taken into account when we get around to
16  the sentencing recommendation.

17  So I'm ruling basically in your favor, and I
18  know Mr. Lopez doesn't object to my doing that on those
19  two issues you've raised, but they were considerations
20  that were very properly brought to my attention, and
21  will, in some effect (phonetic) -- the arguments there
22  are relevant to how I will be proceeding under 3553.

23  It's a very serious situation we're faced
24  with here, and I'll be much more graphic about it when
25  I get to Mr. Sensi, hopefully tomorrow.

6

1          I think Ms. Culver made the mistake for which

2     she's paid a heavy penalty, associating with the wrong

3     male, and it was a sad situation not just for her but,

4     of course, for Savannah (phonetic).

5          All right.  Well, why don't you go ahead in

6     her behalf.

7          MR. RESETARITS:  Okay, Your Honor.

8          Just so I can frame my arguments, what I

9     understand the Court to have said is that with respect

10    to an upward departure under the Guidelines, or an

11    upward variance, the Court will not be doing that --

12          THE COURT:  No, I don't think you'll have to

13    argue that.

14          MR. RESETARITS:  Thank you, Your Honor.

15          THE COURT:  Okay.

16          MR. RESETARITS:  So, other than those issues

17    that I objected to in the Presentence Report, I also

18    just ask for a couple of points to be clarified.  We

19    don't really need to go into those, and other than

20    that, Your Honor, we accept the Presentence Report as

21    being factually accurate.

22          THE COURT:  That's what I wanted from you.  I

23    accept the Presentence Report as being factually

24    accurate, and it was a very, very hopeful report to me

25    because it went into all the elements that had to be

27

7

1   gone into here, so we'll make that part of the record.

2           I want to --

3           MR. FEIN:  Your Honor, may I interrupt for

4   just one moment?

5           THE COURT:  Yes.

6           MR. FEIN:  This is David Fein, co-counsel to

7   Krishna Patel on this matter.

8           THE COURT:  Oh, good morning.

9           MR. FEIN:  Good morning to you.

10          We just would ask that at the proceeding we

11  refer to the minor victim simply as "Minor Victim" and,

12  as well, I think we're going to have some people who

13  are her foster parents and we would like to refer to

14  them generically, as well, and if, in the course of the

15  proceeding, someone naturally slips and refers to a

16  name, we would ask anyone in the courtroom, as a

17  request, obviously not a requirement, anyone reporting

18  on this, out of the fairness and the dignity of the

19  Minor Victim, that they refer simply generically to the

20  individual as the "Minor Victim" and not by name.

21          THE COURT:  All right.

22          Just Mike Mayko is in the courtroom

23  somewhere, and I hope if he is, he will observe that.

24          I intended to refer to Mr. and Mrs. H by

25  name, but I'll refer to them as "Mr. and Mrs. H", but

8

1   we're very indebted to them.

2           Are they here in the courtroom today?

3           MR. FEIN:  They are, Your Honor.

4           THE COURT:  Yes.  They're important people

5   here.  I'll be talking about them as we get to the

6   sentencing.

7           Okay.  Thank you.  Nice to have you aboard.

8           MR. FEIN:  Thank you, Your Honor.

9           THE COURT:  Go ahead, Mr. Resetarits.

10          MR. RESETARITS:  Yes, thank you, Your Honor.

11          Your Honor, when the Court grapples -- as the

12  Court grapples with where to -- how much prison time to

13  sentence Ms. Culver to, I would ask the Court to

14  consider various factors, many fine qualities that Ms.

15  Culver has.

16          She is somebody who, as the Presentence

17  Report carefully and thoroughly lays out, has had many

18  advantages in life, unlike many defendants that you

19  have -- that appear before you, in the sense that she

20  was raised with good -- you know, had good living

21  conditions, went to school, graduated from high school,

22  attended college.

23          However, she was -- things occurred in her

24  childhood, I think, which continue to plague her, and I

25  talk about that in my sentencing memorandum, and the

29

9

1    Presentence Report talks about it, and it's not to
2    attempt to excuse what my client accepts responsibility
3    for, but it's so that the Court has more information to
4    try to understand how this could have happened, and
5    there's no way to really satisfactorily answer that.

6        My client is extremely remorseful and will be
7    seeking forgiveness for the rest of her life for what
8    she's done, but she's somebody who has -- whose father
9    belittled her and criticized her for being overweight,
10   and not good enough, and then when she married Mr.
11   Culver, who's the father of the Minor Victim, he seemed
12   to continue in that role, where he denigrated her and
13   criticized her, and left her with a newborn, and has
14   never supported the Minor Victim.

15       My client, over the years, has worked hard to
16   get good positions in the travel industry, and to get
17   promotions.

18       She has moved several times in order to take
19   better jobs and, as the foster parents have said to the
20   Court in their letters, and to Mr. Lopez, Ms. Culver
21   has been, in so many ways, a good parent.

22       This offense obviously is the opposite, it's
23   the opposite of protecting your child, and so it's --
24   the Court may almost not want to hear any statement
25   that she has been a good parent but --

10

1           THE COURT:   I must say the Court --

2           MR. RESETARITS:  -- that's the great

3   contradiction.

4           THE COURT:   -- the Court was so disturbed by

5   the filming I saw yesterday, the other day, rather,

6   Friday, that it's just a dreadful situation she got

7   herself into.  Essentially, she just met the wrong

8   person at the wrong time.

9           MR. RESETARITS:  That's so true, Your Honor.

10          She is an individual before the Court with no

11  prior record, who has worked hard and who has, again,

12  tried to provide as best she could as a single mom.

13          This is a dreadful, horrible period of time,

14  but it's some time ago now.  It happened ten years ago.

15          Ms. Culver never had any involvement in

16  anything like this, at all, there's no dispute about

17  that, up until 2001, and has never had, and never will

18  after that.

19          So we have a situation where, of course, the

20  Court needs to punish Ms. Culver for the acts, with the

21  recognition that they happened ten years ago, never

22  before, and even the Government states this is not an

23  individual who is likely to get in trouble again, in

24  any way, shape or form and, in fact, the Sentencing

25  Commission statistics back that out.  People of her age

31

11

1   and background have about a six percent chance of any
2   kind of recidivating event.

3          So, Your Honor, and then when you look --
4   when we look at what Ms. Culver has done these past 39
5   months in -- at the Donald W. Wyatt Detention Center, a
6   place where it houses all different security
7   classifications, and therefore, the conditions are more
8   difficult, there's less opportunity for movement,
9   programming, and I have scored, under the BOP
10  guidelines, Ms. Culvers' security designation, and she
11  would be eligible for a camp, but for the type of
12  offense, which makes her eligible for low security, a
13  place like Danbury.

14         THE COURT:  Yes, I'm not sure the Bureau of
15  Prisons is going to pay much attention to us, but I'll
16  be interested in your recommendation as to a place for
17  incarceration that should get her out of Wyatt,
18  obviously, and the Bureau of Prisons would take her out
19  of Wyatt to begin with but --

20         MR. RESETARITS:  Yes, Your Honor.

21         THE COURT:  -- where she goes will be
22  important, and I want to get the input -- I assume you
23  have the input from family I'd like to refer to by name
24  but I'm not allowed to, but I -- they're in the
25  courtroom, and I assume you talked with them about

32

12

1   where would be desirable to have her incarcerated.   I

2   assume Florida.

3           MR. RESETARITS:  We have discussed that, Your

4   Honor, and we will be asking the Court for a

5   designation to Tallahassee, --

6           THE COURT:  Yes.

7           MR. RESETARITS:  -- which is a low security

8   facility.

9           THE COURT:  That's very good.  I'll make that

10  recommendation.

11          MR. RESETARITS:  But while Ms. Culver has

12  been at Wyatt these past 39 months, she has been very

13  active in doing what she can do to better herself.  She

14  has taken many courses that Wyatt offers, and I

15  attached, as part of my sentencing memorandum, a list

16  of those courses, as well as just a mountain of

17  correspondence courses in theology, which are also

18  listed as an exhibit to my sentencing memorandum, and I

19  wanted to show the Court today, and when I was at my

20  office last night and -- had taken the folder out to

21  separate it and must have forgot it in my office, but

22  it's a --

23          THE COURT:  Don't worry about it.  You have

24  an awful lot of things in this case.

25          MR. RESETARITS:  -- it's a stack of

13

1    certificates that literally --

2              THE COURT:  I know about that.

3              MR. RESETARITS:  -- is one inch thick, and

4    I've never seen this before, from one of my clients.

5              It's -- Another thing that I was greatly

6    impressed with is that she started a job at Wyatt as a

7    seamstress, to repair clothing there.  No one has ever

8    done that before.  She suggested it and she's been

9    working full-time in that capacity for two years now,

10   saving the institution, it's got to be hundreds of

11   dollars, or perhaps over a thousand or thousands of

12   dollars.

13             So again, this bodes well for her, in terms

14   of supervision, in terms of starting a new life when

15   she's released, to try to get work.

16             She will be having to register, obviously, as

17   a sex offender.  She will be a felon.  She will have

18   significant collateral consequences that also is a form

19   of punishment, in a way, that she will be dealing with.

20             So, Your Honor, I mention all of these things

21   in an effort to have the Court, on the one hand,

22   balance those good things about her with the -- what

23   you saw on the tapes, and the seriousness of the

24   offense, to suggest to the Court that they cancel each

25   other out, that they don't -- that any desire that the

14

1    Court might have to go up from the Court's starting
2    point, the Court will not go down, but will stay, will
3    stay where we had spoke about at other times.

4              THE COURT:  Yes.  I don't have the feeling
5    about this situation that I will have tomorrow when I
6    face a person who I can't find any redeeming feature in
7    at all.

8              Here, there are a lot of redeeming features.
9    There's a lot of difference.  She was as much a victim
10   as she was a perpetrator, and you can't say that about
11   Sensi.

12             MR. RESETARITS:  Thank you, Your Honor.

13             And to conclude my remarks, and then I would
14   like the foster parents to say a couple words and then
15   my client would like to briefly address the Court.

16             What I would like to conclude with is, and I
17   know Mr. Lopez has been helpful in trying to come up
18   with some cases by -- which we could compare this one
19   to, because there aren't many, thank God there aren't
20   many, but the two cases that have been raised are the
21   Jones case and Dambro case, and I would ask the Court
22   to consider that the Dambro case is one that is very
23   helpful because it's a case with the same guideline
24   range of 97 to 121 months, increased to 120 or 121,
25   with a similar background, similar facts, in terms of

15

1   the abuse and the filming and, for the other reasons we
2   discussed, a similar motion, and in that case Judge
3   Burns gave Ms. Dambro six years.

4           In the Jones case, on the other hand, we had
5   -- dealing with the guideline range of double what we
6   have here.  It's a 240-month guideline range and a
7   defendant in Criminal History Category V, very
8   different facts, and an individual got a 50 percent
9   reduction from 240 down to 120.  That case is less
10  helpful because different criminal background, person
11  who was convicted of drug offenses, prostitution,
12  larceny, and a different guideline range, much higher.

13          So, Your Honor, for all of those reasons, and
14  the reasons that were discussed previously, I would ask
15  the Court to strongly consider a sentence of five years
16  for this Defendant, with all of her characteristics,
17  her history.

18          As one of the foster parents mentioned, to
19  miss out on what the Minor Victim has accomplished the
20  past several years, and she forfeited that right, but
21  the question is for how long, that's been major.
22  That's been a major punishment in and of itself.

23          Your Honor, I would ask that the foster
24  parents now be --

25          THE COURT:  Yes, they --

16

1          MR. RESETARITS: -- able to speak.

2          THE COURT: Yes, normally I don't ask for

3    that and the don't normally like to have it, but this

4    case is different and I think I would welcome input

5    from Mr. and Mrs. H because I think they are very, very

6    important people here, in the scheme of what's going to

7    happen in the future, especially for S, the victim, so

8    I would welcome their statements.

9          I'm (unintelligible), especially Mr. Fein

10   here, that -- your comment that there are very few

11   cases, happily, in this area. I wish that were going

12   to continue, but my own reaction, which I think is

13   shared by a lot of my colleagues, is that the United

14   States Attorney's Office, and certainly, Mr. Holder,

15   the United States Attorney General, has emphasized

16   this, that we're going to get more of these cases.

17         Facebook is one of the worst things, in my

18   judgment, that's ever come down the pike. It's not

19   talking about people the ages of this victim, it's

20   talking about the teenagers, whose parents will have

21   great difficulty in controlling access and limiting

22   access to them because of Facebook, and I think the

23   United States and all of us on the bench are going to

24   face more and more of these cases, and I hope this guy

25   who invented Facebook is enjoying all his money because

17

1  I think he's going to hurt a lot of people, and I hope,
2  and Mr. Fein probably joins me in hoping I'm wrong, but
3  I think he's going to get more of these cases.
4          Well, let me hear from Mr. and Mrs. H.  I
5  would like to hear from them very much.
6          Come up and adjust the mics so I can hear
7  you.  I want to welcome you to the courtroom because I
8  think you're so important.
9          MS. H:  Good morning, Your Honor.
10         THE COURT:  Good morning.
11         MR. H:  Good morning.
12         MS. H:  I am the foster mother of the victim
13  and also there has been a (inaudible) in our
14  (inaudible) for a long time.
15         I can't minimize what happened in any way.  I
16  can't (unintelligible) about it, but I know that the
17  things that happened were not normal for Laura.  It's
18  not something she ever would've done on her own.  This
19  was not her brain child.  This isn't something that she
20  would have normally participated in.
21         She was in very difficult circumstances.  She
22  was struggling as a single mother.  I don't know what
23  in her allowed it to happen.
24         THE COURT:  Oh, I think she was seduced by a
25  super seducer.

18

1          MS. H:  Yes, sir.

2          THE COURT:  He's a slick character.

3          MS. H:  She was a good target, a perfect

4    target.

5          THE COURT:  I'm afraid so.

6          MS. H:  So, that being said, you've probably

7    -- you've met Laura.  You can probably see how bright

8    she is.  She's very witty.  She's a hard worker.  She's

9    always -- She was never sitting still.  She was always

10   very organized, always doing something.  She still has

11   a lot to offer the world.

12         THE COURT:  You would agree that the father

13   was a very adverse influence in her life.

14         MS. H:  I didn't know her father.

15         THE COURT:  Uh-huh.

16         MS. H:  He was out of the picture, and also I

17   lived -- I was raised overseas, so there was a long

18   period of time where we did not see each other.

19         THE COURT:  You probably heard about it from

20   her, I suppose.

21         MS. H:  No, I didn't.  She does -- You know,

22   Laura doesn't dwell on bad things, or blame people for

23   things.  She just kind of goes on.  It wasn't part of

24   our conversation.

25         There's a little bit of an age gap too.  She

19

1    was a teenager and I was a little kid, so we didn't
2    discuss a lot of those things, but she's a hard worker.

3            She -- I think she's going to come out of
4    this with an exquisite education, just because I know
5    the books that she's been reading and how she's been
6    trying to improve herself and make good use of this
7    time that she's spent.

8            As for punishment, she can do more time.  I
9    don't think she can be punished any further than she
10   has been, with what she's missed out in her daughter's
11   life.  My husband had to walk her out as Homecoming
12   Queen and Laura's presence was very greatly missed, and
13   I think that hurt a lot of us, to know that she was
14   missing that, and also the victim's graduation from
15   high school as an honor student, all of the college
16   research, and finding the right place to go, and
17   helping her to decide, these are things that Laura
18   would --

19           THE COURT:  You're going to be very important
20   because the time that Laura has to spend in prison will
21   keep her from helping you with respect to
22   (unintelligible) the victim.  So you're very important
23   people, both of you.

24           MS. H:  Thank you.

25           It has -- The Victim has been a blessing to

40

20

1  us and our family.

2         THE COURT:  Well, by the time her mother gets

3  to see her again -- Well, of course sending her to

4  Tallahassee will be helpful, but to really resume being

5  a mother to her, she'll be well along in years,

6  probably -- hopefully not in need of that kind of

7  guidance.

8         Well, let me hear from you.

9         MR. H:  Well, I won't -- Good morning, Your

10 Honor.

11        THE COURT:  Good morning.

12        MR. H:  Thank you for the opportunity to be

13 here.  It's a culmination of a lot of sad events that

14 lead us to this day, and it's -- but we are thankful

15 for all the people here, who put an enormous amount of

16 work and effort and commitment into --

17        THE COURT:  A lot of people did.  You were

18 very lucky to get Mr. Lopez as a Probation Officer.

19        MR. H:  And I'm referring to him

20 specifically, sir.  You're exactly correct.

21        Agent Khattabi, I've come to know him over

22 the last few years circuitously (phonetic), through the

23 phone calls and follow-ups, and things like that.

24        I greatly appreciate your efforts and your

25 commitment to help we -- bring this all to a closure.

21

1      As my letter stated, I'm now the -- I'm the
2  father of, now, four children, and I cannot, as a
3  father, understand how another man can treat --
4          THE COURT:  Geez, you probably haven't seen
5  the films either.
6          MR. H:  No, sir, I have not, and I have --
7          THE COURT:  Unbelievable.
8          MR. H:  -- I have had that related to me,
9  though I have --
10         THE COURT:  Just don't ever watch them.
11         MR. H:  I certainly never intend to and, as
12  my wife and I have done for the last several years when
13  all of this came to light, we -- those are events that
14  we have to place in a box and we have to dwell and move
15  forward because --
16         THE COURT:  Yes.
17         MR. H:  -- if you dwell in that box, then we
18  can't move forward on that.
19         THE COURT:  That's very important for the
20  victim, to constantly move forward.
21         MR. H:  And so she has done that.  She is now
22  a very resilient young woman --
23         THE COURT:  Yes.
24         MR. H:  -- and we are very committed to
25  seeing her through her (inaudible).

22

1           THE COURT: You've done a great job.

2           MR. H: Well, we'll -- We hope. We've tried.

3    We'll do the -- We'll do our best.

4           But in regards to a statement made earlier,

5    Laura certainly picked the wrong man to associate, but

6    I also mentioned that she's done that twice, and the

7    first time was with her now ex-husband, who I, as a

8    father, hold somewhat culpable, although I certainly --

9    I guess our laws do not allow that far an outreach in

10   what brings us here today, because he -- had he been a

11   real father, he would have not allowed the events to

12   have happened today, --

13          THE COURT: Yes.

14          MR. H: -- and by his mere absence, perhaps

15   condoned it, and I want to make a statement to that and

16   I have.

17          THE COURT: Well, you know, that's why you

18   two are so important, because so many other people have

19   let her down, let the victim down. That's very

20   important to have the help you're giving her.

21          MR. H: And my final statement, unless the

22   Court has anything further to ask of us, is that if we

23   move forward to hearing today, what sentence you'll

24   decide to place on Laura, I'll mirror the statements

25   that my wife said. Hopefully we'll see something from

43

23

1     the Court that draws a clear distinction between the
2     actions of both parties, and you've alluded to that
3     several times, but I'll just ask the Court to consider
4     that on the day that this went down, that Agent
5     Khattabi  and his peers brought this all to light, the
6     distinction of what Laura was doing, which was trying
7     to rebuild her life.  That doesn't excuse her past
8     actions, but she was trying to move on with her life,
9     and in some way make that up to the victim, and I pray
10    that that will be given its due consideration.
11              Thank you.
12              THE COURT:  Thank you both very much.
13              MS. H:  Thank you.
14              THE COURT:  Well, Government?
15              MS. PATEL:  Thank you, Your Honor.
16              As we indicated to Your Honor earlier today,
17    I think it's very important and clear for the record,
18    that given the Government's motion, both under 5K and
19    3553(e), as well as other agreements we've entered into
20    with the Defendant in this case, the Court is no longer
21    bound by the mandatory minimum sentence in this case,
22    and therefore, Your Honor is effectively looking at a
23    sentence of anywhere from probation to 20 years.
24              Moreover, the Government has stated in its
25    sentencing memo, that given the recent Second Circuit

44

24

1   law on this area, while there is no finality to this,
2   the difficulty about which guideline manuals to use, we
3   are now in agreement that the 2001 Guidelines Manuals
4   are the ones that should be used, but we certainly ask
5   that the Court consider and reference the 2011 manuals.

6           The recognition that our society and Congress
7   is taking this crime far more seriously, to Your
8   Honor's point, this is a crime that is somewhat driven
9   through technology. We're seeing more of it. We are
10  also seeing the devastation of it, in terms of its
11  impact on the victims (unintelligible).

12          With that, I think, you know, the natural
13  place to start is the nature of this offense, and Your
14  Honor is perhaps in the unfortunate position of
15  understanding and knowing this crime because you had
16  the opportunity to actually view the crime. Your Honor
17  saw several minutes of what was hours and hours of
18  abuse. The abuse lasted at least a year, if not more.
19  It is simply indescribable, and short of the death of a
20  child, it is perhaps one of the most -- the most severe
21  form of child neglect imaginable.

22          We certainly don't need an expert or a doctor
23  to understand that the Minor Victim here was
24  approximately eight years old, and like any eight-year-
25  old would do, she would look to her parents to be the

45

25

1   source of safety and security, love, comfort,
2   stability.  A child's world depends on her parents, and
3   when that child abuse occurs, particularly the level of
4   child abuse that occurs here, it violates that very
5   trust and, in reality, it goes to the heart of this
6   child's relationship with the whole world for the rest
7   of her life.
8       We are so grateful to the foster parents
9   here.  Every single person, David Fein, myself, Agent
10  Khattabi, all who had been involved in other cases, we
11  all know, perhaps more than most, the deep, and
12  permanent, and lasting impact of child abuse on a
13  child's life, and how many children never can come out
14  of it.
15      We have all seen firsthand, the children who
16  aren't able to move on, and we have no doubt that it is
17  because of the foster parents in this case, that this
18  victim is doing so well, and we are so grateful in a
19  way that I don't even think that the foster parents
20  themselves can possibly appreciate or understand.
21      Having said that, you know, it may be the
22  case, and what may be very hard to hear, is that this
23  child is doing so well because she's not with her
24  biological mother, that she is with these foster
25  parents, because they are actually being parents to

26

1    her, and as much as we may want to characterize her as

2    a victim being seduced by a seducer, this is a woman

3    who was educated.  Her issues with her biological

4    father cannot condone or explain, justify any of these

5    actions.

6           As human beings we all go through

7    difficulties, some far more than others, but her

8    difficulties can't explain what she's doing.

9           And when we talk about the responsibilities

10   of the father that was absent here, this is a woman who

11   -- she had this child, a wonderful, wonderful child.

12   She had obligations to this child.  She had a career.

13   She had a career where she made a good amount of money,

14   and she had family, and she had friends.

15         And as her mother, she was responsible to be

16   the first line of defense for this child.  She had that

17   responsibility and she has failed in every single way.

18   The betrayal to this child will have an impact, and so

19   the seriousness of this offense cannot be more

20   understated.

21         The Guidelines perhaps don't capture the

22   seriousness of the offense at all, and I would, you

23   know, close by simply just asking this Court, you know,

24   to please understand that she had the responsibility to

25   this child, and that all of the reasons that this child

27

1  is doing so well, again, it might be because she's not
2  in her life. She may be making a better life for her.
3  She clearly indicates that she's doing that.

4       We don't believe she did this before. We
5  don't believe she's going to do this again. In other
6  words, individual deterrence is certainly not the
7  issue. The issue here is for the community at large to
8  understand that they have to have respect for our laws.

9       She was in a place where she was telling her
10  child, asking her child, while she was abusing her
11  child, whether the child would say anything to anyone.

12       I mean, so much of this was premeditated. So
13  much of this was she was aware of what was happening,
14  and nobody can explain why it is she let it continue to
15  happen. We all understand she stopped, but this abuse
16  went on repeatedly, for almost over a year.

17       So in terms of general deterrence, the
18  message out there, the message to the world, the
19  message to the community is this is a very serious
20  crime, one that the United States Attorney's Office
21  does take very seriously, and one that other people
22  should understand that if you are going to do this, if
23  you are going to fail in your responsibilities as a
24  mother, as a parent, the consequences are severe
25  because what you are doing is so severe. It is not

48

28

1    only damaging this child, it is damaging our society at
2    large because it's impacting our future generation.
3            THE COURT:  So you're saying really, you're
4    emphasizing the aspect of 3553 that is important to the
5    Court and, of course is, and that's general deterrence,
6    and that's the heart of what your statement is?
7            MS. PATEL:  Yes, Your Honor.
8            THE COURT:  Yes.
9            All right, Ms. Culver, -- What do you want to
10   say, Mr. Resetarits?
11           MR. RESETARITS:  I would like to respond to a
12   couple --
13           THE COURT:  Go right ahead.
14           MR. RESETARITS:  -- points that Attorney
15   Patel made.
16           The Government talks about how the Guidelines
17   don't capture.  Well, I disagree.  We have a situation
18   here, where the Government insisted, and certainly had
19   the facts to back it up, but they insisted on a
20   production of child pornography charge when other
21   charges were available, such as crossing state lines to
22   abuse a minor --
23           THE COURT:  The old Mann Act.
24           MR. RESETARITS:  -- which would not have
25   triggered a ten-year mandatory minimum, and Ms.

29

1   Culver's guidelines would be 97 to 121.  It's a two-
2   year bump, up to a mandatory minimum for a first
3   offender, and I know the Court is not hearing me, that
4   I don't acknowledge the seriousness of the events, but
5   when we're talking about a guideline range of 120
6   months for a 56 year-old person with no prior record,
7   and the Government's not disputing that there are not
8   going to be other incidents, that's a hefty guideline
9   range, in and of itself.

10          Now, with respect to the length of time of
11  the abuse, there appears to have been a gap, that it's
12  probably not accurate to say it went on continuously
13  for one year.  This is not a point that -- I'm not
14  trying to split hairs, but I'm just responding.  There
15  appears to have been a gap of some months, and then one
16  final act, or a day or two, and then my client ended it
17  once and for all.

18          It is an important point that unlike so many
19  cases before the Court, where the conduct stopped
20  because of law enforcement, this conduct stopped
21  because of my client stopping it.

22          And lastly, the Government suggests that the
23  only reason that Minor Victim is doing so well right
24  now is because of the foster parents, goes too far.
25  The foster parents themselves, and they're not just

50

30

1    been modest, they say that the Minor Victim is doing so
2    well because of my client, not just them, which makes
3    sense, because if -- a person is not likely to be able
4    to turn it around to such an extent that we would see
5    all of these accomplishments from the Minor Victim,
6    such as Homecoming Queen, scholarship to college, a
7    soccer captain, all of these things that the foster
8    parents have provided, such as a safe and loving
9    environment, but who she is today has to be partly as a
10   result of my client's parenting.

11           THE COURT:  Well, I think the Government
12   would respond on one aspect of this, that the 5K
13   obviates the mandatory minimum, so that that's a big
14   break there, because it frees the Court to ignore the
15   mandatory minimum and, of course, the application of
16   the guideline range of 2001 instead of the 2011 is
17   significant here, and (unintelligible) significant for
18   the Government to point out, quite accurately, that the
19   2011 guidelines do reflect the seriousness of this
20   situation, which I personally think is going to get
21   worse rather than better, but let me hear from Ms.
22   Culver.

23           THE DEFENDANT:  Your Honor, you've read my
24   letters and --

25           THE COURT:  I have, yes.

31

1        THE DEFENDANT:   -- and I just really want to
2   look at you and tell you how sorry I am for my actions.
3   A parent is supposed to protect their child and I
4   abused her.  I did the opposite.  It was 10 years ago,
5   for a year, and I did try to rebuild our lives the past
6   years after that, and my daughter has worked very hard,
7   as well, educationally, and rebuilt her life.
8        So I -- I'm going to forever be ashamed,
9   embarrassed and regretful, and I'm just a puddle of
10  remorse.  I'm extremely sorry, and it is going to take
11  me the remainder of my life to make this up to those
12  that I've hurt, to my child and to my family.
13       But more importantly, right here too, I
14  wanted to thank my cousins, my -- for being there, for
15  the love and caring support that they've given to my
16  child since October 3, 2008.
17       THE COURT:  And they've come all the way up
18  here to tell me --
19       THE DEFENDANT:  They did.
20       THE COURT:  -- tell me about it in person,
21  which --
22       THE DEFENDANT:  They did.
23       THE COURT:  -- I appreciate very much.
24       THE DEFENDANT:  They did, and they came all
25  the way to Rhode Island to see me yesterday, and I know

32

1    that Savannah was -- my child was at a difficult --
2              THE COURT:  It has to be "S".  I goofed up
3    too.  Mike Mayko will ignore the --
4              THE DEFENDANT:  She was -- That was a
5    difficult time.  She could have gone the other way at
6    the age of 15 and a half, but she didn't, she took the
7    high road, and I give that credit entirely to the
8    foster parents.
9              THE COURT:  So do I.
10             THE DEFENDANT:  But, yeah, I do know that the
11   years we spent together were very formative, so I just
12   want to thank them, and I love them, and I just -- Just
13   thank you.
14             THE COURT:  Well, they obviously love you and
15   they love S also, and they've demonstrated the love.
16   In fact, the nice thing about this is that their own
17   family is so strong, and obviously it's good to be a
18   child of that union, and she's been accepted as another
19   child --
20             THE DEFENDANT:  She has.
21             THE COURT:  -- in that union, and that's
22   very, very helpful.
23             THE DEFENDANT:  I just really -- I just want
24   tell you how sorry I am.
25             THE COURT:  Okay.

53

33

1      THE DEFENDANT: There's no excuse. I'm
2  sorry.

3      THE COURT: Well, tomorrow is going to be an
4  easy day for me. Today is not an easy day. It's a
5  very, very difficult sentencing. There are a whole lot
6  of factors here that weigh on both sides, and I think
7  the Government has made a very excellent presentation
8  of the side which illustrates how much the Government
9  has understood not just the seriousness of the problem,
10  but the individuality of this particular Defendant,
11  which works with the seriousness of the problem. She
12  was really taken down the wrong road by a very evil
13  individual.

14      The Second Circuit has told us that we're
15  supposed to jump through all the hoops, so we'll do
16  that.

17      Page 4 of Mr. Lopez' excellent Presentence
18  Report has the Base Offense Level of 27 for production
19  of child pornography. He added four levels for the age
20  of the victim, which was eight at the time, and another
21  two levels because the Defendant was the victim's
22  mother. So as Mr. Resetarits has pointed out, a lot of
23  this mother/daughter relationship is taken care of in
24  the Guidelines.

25      So you're up to 33, and then you have the

34

1   customary three-level reduction, which we're all pretty
2   use to in all these cases, taking it down to a 30.
3          And her Criminal History Category rewards her
4   because it's a good Criminal History Category of I.
5          So under those Guidelines of 2001 rather than
6   2011, you end up with a range of 120 to 121 months.
7   That's a 10-year situation because the guideline
8   provisions are keyed to the mandatory minimum, but we
9   can ignore that because of the 5K, and we can depart
10  downward because of 5K.
11         There will be no fine here.  She obviously
12  can't afford to pay a fine.
13         There's no restitution involved here.
14         Mandatory special assessment, I think Mr.
15  Resetarits pointed out, has already been paid.  I think
16  I'm correct about that.
17         The sentence I will hand down is a sentence of
18  8 years, 96 months.  I would be very tempted to go, as
19  Judge Burns did, to a sentence of six years, but I'm
20  persuaded by the Government's arguments, that what's
21  happened here in the last few years especially, is very
22  important, on the seriousness of the crime.  So I'm
23  sentencing to eight years with credit, of course, for
24  the time she's already served, which is considerable.
25         The term of supervised release is three

35

1 | years. Now, your supervised release will be very
2 | important to Probation. You've already had a lot of
3 | experience with Probation. Probation is going to be
4 | very, very important in your future life, there's no
5 | question about it.

6 | The comments made by Mr. Lopez are very
7 | significant here, to the Court, and the consideration
8 | of what the new guidelines mean, and that's why he
9 | included the thought about an upward variance, really
10 | because of the new Guidelines, and I'm not going with
11 | the upward variance at all, but we are going to depart
12 | downward, as we're permitted to do in the 5K.

13 | As he points out, Ms. Culver would benefit
14 | from a mental health treatment, both in prison and on
15 | supervised release, in addition to sex offender
16 | treatment. The various conditions of release for sex
17 | offenders, both mandated by statute and recommended by
18 | the Guidelines are probably necessary for the
19 | successful supervision here.

20 | So, the situation on conditions of the term
21 | of supervised release. Let me stress, as I go through
22 | these, that they can change. By the time Probation
23 | takes over at the end of your sentence, which you've
24 | served almost half of, the -- that time may see changes
25 | in what we face here, and it may be that Probation

36

1  would regard different conditions as being more
2  appropriate than the ones I'm imposing now.   The point
3  I ought to make is probation is the governing body that
4  deals with those conditions at the time.

5       The mandatory conditions are put on in
6  addition to standard conditions of supervised release.
7  The mandatory conditions are:

8       Do not commit another federal, state or local
9  offense, and I share everybody's belief that you will
10 not commit another federal, state or local offense.

11      You may not unlawfully possess a controlled
12 substance.

13      You must refrain from any unlawful use of a
14 controlled substance, and submit to one drug test
15 within 15 days of release on supervised release, that's
16 a standard condition; two periodic drug tests
17 thereafter, for the use of a controlled substance.
18 That may change if Probation feels it's appropriate to
19 change it.

20      The assessment has been paid, I believe, a
21 hundred dollars.

22      Now, a Defendant such as you, convicted of
23 the sexual offenses described in 18 United States Code
24 4042(c)(4) shall report the address where you reside
25 and a subsequent change of address to the probation

57

1    officer responsible for supervision;

2           register as a sex offender in any state where

3    you reside, or employed, or carry on a vocation, or is

4    a student.

5           You may have to cooperate in the collection

6    of a DNA sample, if they request it.

7           Now, the following special conditions are

8    very important here, and again, I don't think they're

9    going to change.  I think that Probation will keep

10   those in place.  I may be wrong, but I suspect they'll

11   be kept in place.  So, here they are:

12          Have no contact with the victim unless

13   approved by Probation.

14          Now, the foster parents here, will have a lot

15   of input into that, as will the victim herself, given

16   the age of the victim at the time that this all takes

17   place, but Probation should monitor that and approve

18   it, and I'm sure Probation will approve it if that's

19   what the victim desires and that's what the foster

20   parents feel are appropriate at the time.

21          The Defendant shall participate in sex

22   offender treatment as approved by Probation, and shall

23   abide by the policies and procedures of any such

24   program, which may include polygraph testing.

25          The Defendant is not to use a computer, or

38

1    Internet capable device, or similar electronic device
2    to access any child pornography.  I'm not going to keep
3    you away from the computer.  We all depend upon them,
4    and there may be, by that time, a whole lot of things
5    that make the current computers ancient history by the
6    time the -- the way they are proceeding
7    technologically.

8          Facebook is a terrible example of it, but
9    there are a lot of good examples of technology and what
10   it's capable of doing.

11         So, do not use anything that's available
12   then, to access child pornography or to communicate
13   with any individual or group for the purpose of
14   promoting sexual relations with children.

15         Defendant shall consent to the use of any
16   computer program which shall monitor suspect computer
17   use on any computer owned or controlled by the
18   Defendant, or any other device that's applicable at
19   that time.

20         The programs used will be designed to
21   identify for Probation, the viewing, downloading,
22   uploading, transmitting or otherwise using any image or
23   content of a sexual nature. that's suspect computer
24   use.  Suspect computer use shall be identified by the
25   installed program or by the Probation Office, through

39

1   the screening of computer usage for certain keywords,
2   phrases and images.

3           You may have to pay all or a portion of the
4   costs associated with all of this, if Defendant -- if
5   the Defendant's ability is there to do so, as
6   determined by Probation. Again, emphasize how
7   important Probation will be to you.

8           You shall not associate with children under
9   the age of 18 except in the presence of a responsible
10  adult who's aware of the nature of Defendant's
11  background and current offense, has been approved by
12  Probation.

13          Submit your person, residence, office or
14  vehicle to a search conducted by Probation at a
15  reasonable time in a reasonable manner, based upon
16  reasonable suspicion of contraband, or evidence of a
17  violation of condition of release. Failure to submit
18  to a search might be grounds for revocation of the
19  terms of supervised release, and Defendant has to warn
20  other residents that the premises may be subject to
21  this condition.

22          I should emphasize, by the way, that the
23  necessity is always there of complying with everything
24  that Probation demands that you do or not do at the
25  time.

60

40

1          You participate in a program approved by
2    Probation for mental health treatment.  You may have to
3    pay all or a portion of that cost again
4    (unintelligible) what Probation depends (phonetic) is
5    the ability to make those payments.

6          Defendant shall provide Probation with access
7    for any and all requests for financial information.

8          The Defendant shall not possess a firearm or
9    any other dangerous weapon.

10          As directed by Probation, Defendant must
11    notify third parties of risks that may be occasioned by
12    Defendant's criminal record, or criminal history, or
13    characteristics, permit Probation to make such
14    notifications to people, and inform the Defendant's
15    compliance with such notification and requirement.

16          You must not loiter around playgrounds,
17    schools, arcades or any other places where children
18    under the age of 18 congregate.

19          You shall not associate with, or have contact
20    with convicted sex offenders or those considered
21    inappropriate by United States Probation.  Certainly
22    you've learned that lesson with Sensi, and I shouldn't
23    have to warn you any further about that.  Sensi is what
24    led you down the wrong road.

25          There may be an approved counseling group in

61

41

1   which you would participate, and Probation, again,
2   determines that.

3           You're prohibited from holding any position
4   of authority or guidance over any children or youth
5   groups, involving individuals under the age of 18, and
6   you are prohibited from accessing or possessing
7   sexually-explicit materials involving minors.

8           Well, that's a lot of restrictions on you,
9   and it may be that you're not -- you don't need those.
10  Your counsel, I think, feels that you do not need a lot
11  of those, and your foster parents may -- foster parents
12  of the victim may feel that you do not need all of
13  this, but again, that's going to be strictly up to
14  Probation.  What I want to emphasize to you is that
15  this gives Probation tremendous power over you, and
16  that's appropriate.

17          Now, you have a right of appeal from this
18  sentence within 14 days (unintelligible) by counsel of
19  your own choice or by court-appointed counsel, to the
20  extent that right of appeal had not been already
21  waived, and if you cannot afford counsel, counsel would
22  be appointed for you.

23          All right.  Anything I've forgotten,
24  Government?

25          MS. PATEL:  Your Honor, just for the record,

42

1   is this a Guideline sentence or are you going from the
2   Guidelines and doing a downward departure to eight
3   years?

4              THE COURT:  Downward departure, 5K downward
5   departure.

6              MS. PATEL:  Okay.

7              And it's a Guideline sentence, and I know
8   Your Honor did specifically take into account, all of
9   the 3553 factors which Your Honor has discussed during
10  the course --

11             THE COURT:  Yes.  I always -- Frankly, I
12  think I've said this so many times that people are
13  getting used to it.  I regard the guidelines, which
14  unfortunately are no longer binding upon us, as being,
15  really, instruments of 3553.

16             I think the real -- what Congress did was to
17  set forth what we as a federal court should do under
18  3553.  So that's what I really use as my own takeoff
19  point, and I try to observe all of the elements of
20  3553, and some of them are very important to the
21  Defendant, for treatment of the Defendant, but I think
22  as you emphasize, it's not specific deterrence, what
23  we're looking at is general deterrence, and the general
24  deterrence is very important, and frankly, that's why I
25  went to eight instead of six.  I was really

43

1  considering, very strongly, six, but you persuaded me

2  that maybe eight is appropriate for the seriousness of

3  what we're doing here.

4          Tomorrow we'll have a very easy sentence.  I

5  expect to have some great satisfaction out of whatever

6  I do tomorrow.

7          All right.  Thank you all very, very much --

8          MR. RESETARITS:  Your Honor, I have a couple

9  of --

10          THE COURT:  Oh, the place, Tallahassee.

11          MR. RESETARITS:  Well, that and a couple of

12  other things, Your Honor, just to ask for clarification

13  for the record.

14          We ask -- With respect to designation, I

15  would ask the Court to recommend to the BOP, excuse me,

16  a placement to Tallahassee women's low security prison

17  or, if for some reason there isn't the bed space, or

18  BOP sees otherwise, a facility as close as possible to

19  Atlanta, Georgia --

20          THE COURT:  Okay.

21          MR. RESETARITS:  -- as a Plan B, or a second

22  best --

23          THE COURT:  I will so recommend.

24          MR. RESETARITS:  -- second best request.

25          Your Honor, with respect to the sentence that

44

1    the Court has decided, I would ask for some
2    clarification. I'm a little bit concerned that the
3    amended Guidelines of 20 years has created a
4    substantial risk of a sentence higher than would
5    otherwise have been decided upon, had we not -- had the
6    Guidelines not been amended.

7              As we discussed before, with respect to the
8    Government's 5K, it was a solid 5K, and if the
9    Guidelines had never been amended, and we were only
10   dealing with 120 to 121 months, I'm concerned that the
11   sentence would have been lower, and thus, the amended
12   range, which if used too much, violates the ex post
13   facto clause, that that has happened here, that there's
14   been a concern that there has been a violation of the
15   ex post facto clause, that the amended Guidelines have
16   influenced the Court such that the ex post facto clause
17   has been violated, because a two-year reduction just
18   doesn't seem to be what would have occurred, given the
19   Government's motion.

20             And then, Your Honor, with respect to some of
21   the special conditions of supervised release, the
22   victim now is 18 years old. She has been writing to my
23   client. They've been writing to each other with the
24   foster parents' permission.

25             There was a -- She had mentioned that she

45

1   would like to visit my client in prison, and I would
2   ask, given all of the facts and circumstances, and the
3   foster parents' information to the Court, that the
4   Court might consider allowing contact, unless Probation
5   determines that --

6         THE COURT:  Well, that's what the condition
7   really said.  The condition says that she's not to have
8   any contact with the victim unless the prior approval
9   of Probation is obtained.

10        Now, I'm sure that Probation, in this case,
11  will rely heavily on the foster parents and -- with
12  respect to the victim, and I will recommend, Ray, this
13  is, I assume, going to be transferred to Florida, to
14  Probation.

15        THE PROBATION OFFICER:  Yes, Your Honor, just
16  on that condition, real quick, --

17        THE COURT:  Yes.

18        THE PROBATION OFFICER:  -- if I could,
19  because I researched that before making that
20  recommendation.

21        In fact, concerning Ms. Jones, it was exactly
22  the same worded condition in her case.  One of the
23  victims -- Both of the victims in that case are adults
24  now, and there is contact between that defendant and
25  the victim, and I would anticipate the same thing

46

1    occurring --

2            THE COURT:  Yes.  Well, I would anticipate

3    that here also.

4            MR. RESETARITS:  Well, Your Honor, the

5    problem is that we don't have a probation officer until

6    my client is released, so what do we do in this

7    situation now, where there's a desire to correspond,

8    there's a desire to visit.

9            THE PROBATION OFFICER:  Yes, I think -- Can I

10   respond to the question?  I think that's up to the BOP.

11   We're talking about conditions of supervised release

12   here, which has no bearing upon how the BOP is going to

13   handle visitation between the victim --

14           THE COURT:  Yes.  I don't put any

15   restrictions on the BOP, but I will say this, if you

16   want my recommendation to the BOP, which I'm perfectly

17   happy to give, in addition to recommending Tallahassee

18   or Atlanta, Georgia, is that the BOP rely heavily on

19   the foster parents in considering access of the

20   Defendant to the victim, which I would recommend, if

21   the foster parents feel that's a positive thing.

22           I think as soon as a couple of years go by

23   and the victim is entitled to make her own decisions, I

24   think the victim will still continue to be influenced

25   by the foster parents.  I hope that will happen and --

47

1   but I think that the victim can make up her own mind

2   and advise the Bureau of Prisons if she wants to make

3   contact with the Defendant, and I hope the Bureau of

4   Prisons would do that. Their visitor policy is pretty

5   good, I think.

6              MR. RESETARITS: Thank you, Your Honor.

7              THE COURT: Now, on the first part of what

8   you said, the ex post facto, I'm going to do something

9   I think is very important here. I don't think I'm

10  going to make any comment on it at all.

11             The statement of the Government was

12  beautifully presented. You know, she didn't use a

13  note, she just spoke, and I think the United States

14  Attorney was pretty impressed by his assistant. I

15  think I was impressed by her. She said it very well,

16  and she said -- she put everything in perspective.

17             So I would take what she said and incorporate

18  it into what I would say if I had been bright enough to

19  think of it, but you put it very well, but the current

20  Guidelines really are all about, what they are

21  reflecting in society, and I -- that's as far as you

22  went, but you didn't ask the Court to be governed by

23  those Guidelines, and the Court was not governed --

24  influenced by those Guidelines.

25             What the Court is influenced by, and I think

48

1   I'm entitled to be influenced by that in my
2   consideration of what's happened since 2001, is
3   Facebook, and things like it, and society has changed.
4   I don't think that's ex post facto, that's conditions
5   which you consider at the time of sentencing and, as
6   you know, federal judges have great leeway, despite the
7   Sentencing Guidelines, as long as we conform to 3553,
8   and 3553 asks you to consider the community and
9   general deterrence, and you're considering general
10  deterrence as of the time of sentencing, not as of the
11  time of the crime.

12          So I'll rest with what Ms. Patel had to say,
13  and incorporate that as the findings of the Court, in
14  response to your ex post facto argument.

15          MS. PATEL:  Your Honor, if I just might, in
16  terms of the proceedings today, I think Your Honor made
17  it very clear that you weren't using the 2011
18  Guidelines, you were not jumping off the 20-year
19  marker, that you decided to start with -- your starting
20  point was very clearly the 2001 Guidelines, and that
21  you granted the Government's departure to the eight
22  years.  I --

23          THE COURT:  I start with 120 months.

24          MS. PATEL:  A hundred twenty months, and
25  you've granted the Government's departure to the eight

49

1   years.

2           Mr. Resetarits keeps arguing this customary

3   practice in Connecticut, that it should have been

4   lower.  Whether we agree or not to that, it's certainly

5   not a binding customary practice, and that given the

6   seriousness of the offense and the nature of the

7   offense, and general deterrence, as you've spoken

8   about, that's what's brought you to the eight years.

9           THE COURT:  Well, let me comment, as I did

10  earlier.  I've talked with Judges here.  I've talked

11  with Probation Officers here, and so on, over a long

12  period of time, and I've also talked in Arizona and New

13  Mexico, where I do a lot of criminal, with judges

14  there, and probation people there, and it is correct

15  that on a 5K a good jumping off point is usually 50

16  percent, and then you go upward or downward, and I

17  don't recall ever going downward below 50 percent, but

18  I have gone up or, as I did here, above the

19  (unintelligible) because of the circumstances that you

20  set forth in your well presented argument.  I'm

21  comfortable with the eight years.

22          THE COURT:  I thank everybody --

23          MR. RESETARITS:  Your Honor, just lastly with

24  respect --

25          THE COURT:  Yes.

70

50

1      MR. RESETARITS:  I didn't get to one of the
2  special conditions which I would ask the Court to
3  reconsider, based on the facts of -- or the
4  circumstance -- history and characteristics of my
5  client, and it's sort of a standard special condition
6  when we've got production of child pornography, that my
7  client wouldn't be able to go to places where children
8  -- minor children congregate.

9      There's no dispute -- There appears to be no
10  dispute that my client doesn't have a background of
11  pedophilia, anything like that, being a predator, that
12  this was a very serious, isolated incident, and so my
13  concern is that because there are so many places,
14  schools, playgrounds, other places where children
15  congregate, it's sort of a mine field, in terms of
16  being on supervised release, and when we have someone
17  who doesn't have that history, and we don't have that
18  concern that she would prey upon a child, it seems that
19  it's not connected, really, to this case, it's really a
20  standard special condition that's just getting passed
21  into his case.

22      THE COURT:  Well again, two things about
23  that.  One is that that's with the -- without the
24  advance approval of Probation; and secondly, the point
25  I keep making, which I think is a very important point,

71

51

1    when we cease dealing with the Bureau of Prisons and
2    return to Probation as being the real fulcrum of her
3    life for three years, the point is that Probation can
4    modify these conditions as Probation sees fit at the
5    time, but more importantly, I think what we're
6    concerned about here is something that keeps crossing
7    my mind, and I hope that we're all in the same correct
8    position of believing that the Sensi situation was a
9    one-time proposition, that she's learned her lesson so
10   well that it won't occur again.

11              What concerns me is she's proven to be, she
12   says because of her father, to a great extent, a
13   vulnerable individual.  She may be subject, when she
14   gets out of the Bureau of Prisons and gets into the
15   term of supervised release period, to again meeting the
16   wrong guy, who is going to take her down the wrong
17   road, as Sensi did.  I don't think that's going to
18   happen in her case, but I am enough concerned about
19   that to let Probation take a look at her situation
20   mentally, and we're going to have mental treatment
21   here.

22              She needs more people in her life like the
23   foster parents, and fewer people in her life like
24   Sensi, and I'm hoping that she will get that influence.
25   I'm not sure she'll get that influence in the Bureau of

72

52

1    Prisons, but she might in that type of camp-type

2    installation we're recommending.  There are some pretty

3    decent people in those places, so we'll have to hope.

4         MS. PATEL:  Your Honor, I would also add that

5    because of her sex offender registration requirements,

6    no states that I'm aware of have the specific

7    requirement, and so I think the best practice right now

8    is to do everything to keep her law-abiding, and she's

9    certainly free to come back to a Court and to Probation

10   to revise those conditions if the particular state

11   doesn't require it.

12        THE COURT:  That's why I think it's so

13   important for me to keep emphasizing the importance of

14   Probation.  Probation will look at everything,

15   including the state law.

16        I think the Government's correct, it seems to

17   be, and I think with Facebook around you're going to

18   get more and more states making these requirements on

19   sex offender registration.  Sex offender registration

20   is one of the most interesting, complex situations

21   we've had in this court, because you get -- the Civil

22   Liberties Union is constantly, because of their

23   orientation, posing on these sex offender registrations

24   as much as they can, some very vigorously with some

25   very good attorneys taking their position.  So you do

73

53

1   get into right to privacy, rights of -- civil rights,
2   which play into that sex offender registration, because
3   there are all kinds of differences in sex offenders.
4       When you look at Sensi, you're looking at
5   about the worst -- I can't imagine anything worse than
6   Sensi.  I hope I never see anything worse than Sensi,
7   but there are a lot of people that are better than
8   Sensi, who are still pedophiles and, you know, need
9   mental treatment.
10      Well, I've said enough.  I'm going to say a
11  lot more tomorrow.
12          MR. RESETARITS:  Thank you, Your Honor.
13          MR. FEIN:  Thank you, Your Honor.
14      (Proceedings concluded at 11:51 a.m.)
15
16
17
18
19
20
21
22
23
24
25

54

C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings

in the above-entitled matter.

/s/_____          March 29, 2012

STEPHEN C. BOWLES

75

Case 3:09-cr-00077-WWE   Document 31   Filed 02/02/12   Page 1 of 4

AO245b (USDC-CT Rev. 9/07)

UNITED STATES DISTRICT COURT
Page 1                                             District of Connecticut

UNITED STATES OF AMERICA                    **JUDGMENT IN A CRIMINAL CASE**

v.                                  CASE NO. *3:09CR77(WWE)*
                                    USM NO: *93468-020*
Laura Culver

                                    David Fine
                                    United States Attorney
                                    *Krishna Patel*
                                    Assistant United States Attorney

                                    *Ronald Resetarits*
                                    Defendant's Attorney

**THE DEFENDANT:** pled guilty to count(s) 1of the Information

Accordingly the defendant is adjudicated guilty of the following offense(s):

| Title & Section | Nature of Offense | Offense Concluded | Count(s) |
|---|---|---|---|
| 18 U.S.C. Sec. 2251(a) | Production of Child Pornography. | 4/2002 | 1 |

The following sentence is imposed pursuant to the Sentencing Reform Act of 1984.
**IMPRISONMENT**
The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total of 96 months with credit for time served.  The sentence imposed is a downward departure based on based on 5K.1.

**SUPERVISED RELEASE**
Upon release from imprisonment, the defendant shall be on supervised release for a total term of 36 months.  The Mandatory and Standard Conditions of Supervised Release as attached, are imposed. In addition, the following Special Conditions are imposed:

(1) The defendant shall have no contact with the victim unless approved by the probation officer.

(2) The defendant shall participate in sex offender treatment as approved by the United States Probation Office, and shall abide by the policies and procedures of the program, which may include polygraph testing.

(3) The defendant is not to use a computer, Internet-capable device, or similar electronic device to access child pornography or to communicate with any individual or group for the purpose of promoting sexual relations with children. The defendant shall consent to the use of any computer program which shall monitor suspect computer use on any computer owned or controlled by the defendant. The program(s) used will be designed to identify, for the Probation Office, only the viewing, downloading, uploading, transmitting, or otherwise using any images or content of a sexual nature ("Suspect Computer Use"). Suspect Computer Use shall be identified by the installed program and/or the Probation Office through the screening of the defendant's computer usage for certain key words, phrases, and images. The defendant shall pay all or a portion of costs associated with computer monitoring based on the defendant's ability to pay as determined by the probation officer.

(4) The defendant shall not associate with children under the age of 18 except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense and who has been approved by the probation officer.

(5) The defendant shall submit his/her person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

(6) The defendant shall participate in a program approved by the Probation Office for mental health treatment. The defendant shall pay all, or a portion of the costs associated with treatment, based on the defendant's ability to pay as determined by the probation officer.

AO245b (US Case 3:09-cr-00077-WWE   Document 31   Filed 02/02/12   Page 2 of 4

Page 2

        (7) The defendant shall provide the probation officer with access to requested financial information.

        (8) The defendant shall not possess a firearm or other dangerous weapon.

        (9) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

        (10) The defendant shall not loiter around playgrounds, schools, arcades or any other placed where children under the age of 18 congregate. The defendant shall no associate with or have contact with convicted sex offenders or those considered inappropriate by the United States Probation Office because of a connection to sexual abuse of minors or sexually explicit materials involving minors, unless as part of an approved counseling group.

        (11) The defendant is prohibited from holding any position of authority or guidance over children or youth groups involving individuals under the age of 18.

        (12) The defendant is prohibited from accessing or possessing sexually explicit materials involving minors.

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments (as follows) or (as noted on the restitution order).

**Special Assessment:**    $100.00

It is further ordered that the defendant will notify the United States Attorney for this district within 30 days of any change of name, residence or mailing address until all fines, restitution, costs and special assessments imposed by this judgment, are paid.

AO245b (US Case 3:09-cr-00077-WWE   Document 31   Filed 02/02/12   Page 3 of 4

Page 3

## JUDICIAL RECOMMENDATION(S) TO THE BUREAU OF PRISONS

(1)    Incarceration a a women's low security prison facility in Tallahassee, FL or as close as possible to a prison facility near Atlanta, GA.

(2)    Recommendation of Foster Parents regarding victim visitation rights to be taken under consideration.

**The defendant is remanded to the custody of the United States Marshal.**

1/30/2012 _____
Date of Imposition of Sentence

_____ /s/ _____
Warren W. Eginton
Senior, United States District Judge
Date: 2/1/2012

**RETURN**

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____, with a certified copy of this judgment.

_____
Joseph P. Faughnan
United States Marshal

By _____
Deputy Marshal

CERTIFIED AS A TRUE COPY
ON THIS DATE _____
ROBERTA D. TABORA, Clerk
BY: _____
Deputy Clerk

78

Page 4

# CONDITIONS OF SUPERVISED RELEASE

In addition to the Standard Conditions listed below, the following indicated (■) Mandatory Conditions are imposed:

## MANDATORY CONDITIONS

■ (1)    The defendant shall not commit another federal, state or local offense;

■ (2)    The defendant shall not unlawfully possess a controlled substance;

☐ (3)    The defendant who is convicted for a domestic violence crime as defined in 18 U.S.C. section 3561(b) for the first time shall attend a public, private, or private non-profit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is available within a 50-mile radius of the legal residence of the defendant;

■ (4)    The defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter for use of a controlled substance;

☐ (5)    If a fine is imposed and has not been paid upon release to supervised release, the defendant shall adhere to an installment schedule to pay that fine;

■ (6)    The defendant shall (A) make restitution in accordance with 18 U.S.C. sections 2248, 2259, 2264, 2327, 3663, 3663A, and 3664; and (B) pay the assessment imposed in accordance with 18 U.S.C. section 3013;

■ (7)    (A)    In a state in which the requirements of the Sex Offender Registration and Notification Act (see 42 U.S.C. §§ 16911 and 16913) do not apply, a defendant convicted of a sexual offense as described in 18 U.S.C. § 4042(c)(4) [Pub. L. 105-119, § 115(a)(8), Nov. 26, 1997) shall report the address where the defendant will reside and any subsequent change of residence to the probation officer responsible for supervision, and shall register as a sex offender in any State where the person resides, is employed, carries on a vocation, or is a student; or

        (B)    In a state in which the requirements of Sex Offender Registration and Notification Act apply, a sex offender shall (i) register, and keep such registration current, where the offender resides, where the offender is an employee, and where the offender is a student, and for the initial registration, a sex offender also shall register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence; (ii) provide information required by 42 U.S.C. § 16914; and (iii) keep such registration current for the full registration period as set forth in 42 U.S.C. § 16915;

■ (8)    The defendant shall cooperate in the collection of a DNA sample from the defendant.

While on supervised release, the defendant shall also comply with all of the following Standard Conditions:

## STANDARD CONDITIONS

(1)    The defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer;

(2)    The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

(3)    The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

(4)    The defendant shall support the defendant's dependents and meet other family responsibilities (including, but not limited to, complying with the terms of any court order or administrative process pursuant to the law of a state, the District of Columbia, or any other possession or territory of the United States requiring payments by the defendant for the support and maintenance of any child or of a child and the parent with whom the child is living);

(5)    The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

(6)    The defendant shall notify the probation officer at least ten days prior to any change in residence or employment, or if such prior notification is not possible, then within five days after such change;

(7)    The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substance, except as prescribed by a physician;

(8)    The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court;

(9)    The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

(10)    The defendant shall permit a probation officer to visit the defendant at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

(11)    The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

(12)    The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

(13)    The defendant shall pay the special assessment imposed or adhere to a court-ordered installment schedule for the payment of the special assessment;

(14)    The defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay any unpaid amount of restitution, fines, or special assessments.

The defendant shall report to the Probation Office in the district to which the defendant is released within 72 hours of release from the custody of the U.S. Bureau of Prisons. Upon a finding of a violation of supervised release, I understand that the court may (1) revoke supervision <u>and impose a term of imprisonment,</u> (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed) _____          _____
            **Defendant**          **Date**

         _____          _____
            **U.S. Probation Officer/Designated Witness**          **Date**

Case 3:09-cr-00077-WWE   Document 32   Filed 02/03/12   Page 1 of 1

Criminal Notice of Appeal - Form A

# NOTICE OF APPEAL

### United States District Court

_____ District of CONNECTIUCT

Caption:

United States of America v.

Laura Culver

Docket No.: 3:09CR77(WWE)
_____
The Honorable Warren W. Eginton
_____
(District Court Judge)

Notice is hereby given that Laura Culver _____ appeals to the United States Court of

Appeals for the Second Circuit from the judgment [✔], other [ ] _____

entered in this action on 2/3/2012 _____ .                   (specify)
                          (date)

This appeal concerns: Conviction only [___]   Sentence only [✔]   Conviction & Sentence [___]   Other [___]

Defendant found guilty by plea [✔] | trial |   | N/A |   .

Offense occurred after November 1, 1987?   Yes [✔]   No [___]   N/A [___]

Date of sentence: 1/30/2012 _____   N/A [___]

Bail/Jail Disposition: Committed [✔]   Not committed [ ]   | N/A |

Appellant is represented by counsel? Yes [✔] | No |   | If yes, provide the following information:

| | |
|---|---|
| Defendant's Counsel: | Ronald B. Resetarits, Assistant Federal Defender |
| Counsel's Address: | Office of the Federal Defender |
| | 265 Church Street, Suite 702, New Haven, CT  06510 |
| Counsel's Phone: | (203) 498-4200 |
| Assistant U.S. Attorney: | Krishna R. Patel, Assistant United States Attorney |
| AUSA's Address: | United States Attorney's Office |
| | 915 Lafayette Boulevard, Bridgeport, CT  06604 |
| AUSA's Phone: | (203) 696-3000 |

/s/ Ronald B. Resetarits
_____
Signature