# 12-471-cr

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

—vs—

LAURA CULVER

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

**REPLY BRIEF FOR DEFENDANT-APPELLANT LAURA CULVER**

TERENCE S. WARD
FEDERAL DEFENDER

BY: RONALD B. RESETARITS
ASSISTANT FEDERAL DEFENDER
ATTORNEY FOR DEFENDANT-APPELLANT,
 LAURA CULVER
265 CHURCH STREET, SUITE 702
NEW HAVEN, CONNECTICUT 06510
(203) 498-4200

To be argued by:
Ronald B. Resetarits

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    POINT I

        PLAIN ERROR REVIEW SHOULD NOT APPLY IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    POINT II

        IF PLAIN ERROR REVIEW APPLIES, THERE WAS AN ERROR THAT IS PLAIN AND AFFECTED SUBSTANTIAL RIGHTS, AND THIS COURT SHOULD EXERCISE ITS DISCRETION TO NOTICE THE ERROR . . . . . . . . . . . . . . . . . 4

        A.    THERE WAS AN ERROR. . . . . . . . . . . . . . . . . . . . . . . 4

        B.    THE ERROR IS PLAIN.. . . . . . . . . . . . . . . . . . . . . . . . 10

        C.    THE ERROR AFFECTED SUBSTANTIAL RIGHTS, NAMELY THE LENGTH OF THE SENTENCE IMPOSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        D.    THE ERROR SERIOUSLY AFFECTS THE FAIRNESS, INTEGRITY OR PUBLIC REPUTATION OF JUDICIAL PROCEEDINGS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE PER FED. R. APP. P. 32(a)(7)©. . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**CASES**                                                                                                 **PAGES**

*Gall v. United States*,
 552 U.S. 38,128 S. Ct. 586 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Johnson v. United States*,
 520 U.S. 461 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Alba*,
 933 F.2d 1117 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Cossey*,
 632 F.3d 82 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*United States v. Dominguez Benitez*,
 542 U.S. 74 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Juwa*,
 508 F.3d 694 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Matthews*,
 773 F.2d 48 (3d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Sofsky*,
 287 F.3d 122 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*United States v. Thomas*,
 274 F.3d 655 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Villafuerte*,
 502 F.3d 204 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Wagner-Dano*,
 679 F.3d 83 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4

**STATUTES AND OTHER AUTHORITIES**

Title 18, United States Code, Section 3553. . . . . . . . . . . . . . . . . . . . . . passim

**MISCELLANEOUS**

Troy Stabenow, *A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines*, 24 Fed. Sent'g Rep. 108, 121 (2011). . . . . . 8

Janis Wolak*, Child Pornography Possessors, Trends in Offender and Case Characteristics*, 23 Sexual Abuse 22, 23 (2011). . . . . . . . . . . . . . . . . . . . . 9

*Fourth National Incidence Study of Child Abuse and Neglect (NIS-4): Report to Congress*, U.S. Department of Health and Human Services et al., http://www.acf.hhs.gov/sites/default/files/opre/nis4_report_congress_full_pdf _jan2010.pdf at 3-4; 9-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

DOCKET NO. 12-471-cr
_____

UNITED STATES OF AMERICA,

Appellee,

-vs-

LAURA CULVER,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
_____

**REPLY BRIEF FOR DEFENDANT-APPELLANT
LAURA CULVER**
_____

**ARGUMENT**

The defendant, Laura Culver, replies to some of the arguments raised by the government's brief. By limiting this reply brief to the arguments addressed below, the defendant does not modify or abandon any of the arguments she previously made or concede any of the issues raised in her principal brief. The issues raised in the defendant's principal brief have been joined and await resolution. The government's brief, however, has raised some points that require this reply.

## POINT I

## PLAIN ERROR REVIEW SHOULD NOT APPLY IN THIS CASE

When it comes to unobjected to sentencing error claims, this Court has not always applied strict plain error review, instead opting for a less rigorous standard. *See United States v. Sofsky*, 287 F.3d 122, 125 (2d Cir. 2002) ("in the sentencing context there are circumstances that permit us to relax the otherwise rigorous standards of plain error review to correct sentencing errors"). Such exceptions to rigorous plain error review have been made in the sentencing context, in part, because correcting a sentencing error only results in a remand for resentencing whereas "noticing unobjected to errors that occur at trial precipitates an entire new trial that could have been avoided by a timely objection." *See United States v. Wagner-Dano*, 679 F.3d 83, 91 (2d Cir. 2012) (internal citation and quotations omitted).

As an example of an instance where strict plain error review has not been applied, in *Sofsky*, this Court entertained a challenge to an unobjected to condition of supervised release where the challenged condition was not recommended in the PSR and the defendant had no prior warning that it might be imposed. *See Sofsky*, 287 F.3d at 125-26. *See also United States v. Alba*, 933 F.2d 1117, 1120 (2d Cir. 1991) (government appeal entertained without any consideration of plain error, and despite no objection at the sentencing proceeding, where government had no prior notice that the judge might rely on two allegedly impermissible factors when granting a downward departure).

The instant case is similar to *Sofsky*. Defense counsel had no prior notice, either from the PSR or the government's sentencing memorandum, that the district court might view the increasing popularity of social media (or advances in technology generally) as relevant to the seriousness of the offense or general deterrence. *Compare Wagner-Dano*, 679 F.3d at 91-92 (claim that court failed to consider the § 3553(a) factors "not particularly novel or complex" where Court has required such consideration in every case since 2005 and "raising an objection to the failure to do so in order to alert the district court to the problem is neither difficult nor onerous," and claim that court failed to address an objection to the PSR should be intuitive and not difficult, thus, as for both claims, plain error review appropriate) (internal quotations and citations omitted); *United States v. Villafuerte*, 502 F.3d 204, 208 (2d Cir. 2007) (unobjected to claim that court did not consider all of the § 3553(a) factors requires plain error review because such a claim is "not particularly novel or complex").

In short, Ms. Culver's asserted sentencing error is a far cry from a claim that the court failed to consider the § 3553(a) factors, a crystal clear legal requirement since *Booker* in 2005. Here, had defense counsel raised an objection to the district court's repeated discussion of Facebook, it is unclear how the court could have corrected or changed its reasoning that Facebook was the worst thing that has "come down the pike" and that there would be more child pornography production as a result of Facebook. Unlike being able to articulate its consideration of the § 3553(a) factors, after an objection at the end of a sentencing hearing (as in *Villafuerte*), or to address one of more written

objection to the PSR, after being asked to at the end of a sentencing hearing (as in *Wagner-Dano*), here there is little basis to say that the court would have been receptive to correcting or changing its unfounded reasoning that the proliferation of Facebook would lead to greater child production.

In sum, because neither Ms. Culver, nor her co-defendant Sensi, used a computer as part of the offense conduct; used any social media sites; or distributed the video images in any way, the district court's fixation on Facebook (or perhaps technology in general) could not have been foreseen by defense counsel. Defense counsel was thus caught off guard and failed to object. But again, even if he had objected, the court would have been unable to undo its reasoning regarding the ills of social media programs and their causal link to greater child sexual abuse. In short, plain error review is inappropriate in this case.

**POINT II**

**IF PLAIN ERROR REVIEW APPLIES, THERE WAS AN ERROR THAT IS PLAIN AND AFFECTED SUBSTANTIAL RIGHTS, AND THIS COURT SHOULD EXERCISE ITS DISCRETION TO NOTICE THE ERROR**

Even if this Court holds that plain error review is applicable to Ms. Culver's procedural claim, the district court indeed committed plain error that affected Ms. Culver's substantial rights, and this Court should remand for a new sentencing hearing as the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

**A. There was an error**

Although district courts enjoy considerable discretion to consider all relevant facts in determining a sentence, "there are distinct limits to this

discretion, and they include a defendant's due process right to be sentenced based on accurate information." *United States v. Juwa*, 508 F.3d 694, 700 (2d Cir. 2007). Procedural error occurs when the district court selects a sentence "based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007). *See also United States v. Cossey*, 632 F.3d 82, 88 (2d Cir. 2011) ("[i]t is uncontroversial to conclude that a sentencing decision that relies on factual findings that were unsupported in the record, and thus could not possibly have been established by a preponderance of the evidence, seriously affects the fairness, integrity, and public reputation of judicial proceedings"); *United States v. Matthews*, 773 F.2d 48, 51-52 (3d Cir. 1985). ("Factual matters considered as a basis for sentence must have some minimal indicium of reliability beyond mere [assertion] and must either alone or in the context of other available information, bear some rational relationship to the decision to impose a particular sentence.") (internal quotations and citations omitted).

The government asserts that the court's Facebook comments reflected its "common-sense observation that child pornography prosecutions have become more common with increasing advances in technology," Gov't Br. at 28, and that the "growing role of technology" was fully relevant in assessing the seriousness of the offense and general deterrence, Gov't Br. at 26-27. But the government is incorrect; the "growing role of technology" (assuming that is what the court meant by its repeated points about the ills of Facebook) was

irrelevant to an evaluation of the seriousness of the offense and general deterrence in this specific case.[1]

First, with respect to analyzing the seriousness of the offense, this was a case of sexual abuse that was filmed by a non-high-tech video camera. There is no evidence that Sensi disseminated the images, with a computer or otherwise. Technology played no role in this offense. And for Ms. Culver, any link to technology was even more remote. The camera was not hers; Sensi brought the camera to Ms. Culver's home to begin grooming her and the victim; *he* wanted to film each episode; *he* set up the camera during each episode of abuse; and, *he* kept the tapes. JA 88-90; 112-119. As the government described Ms. Culver's connection to the filming aspect of the offense, "Culver was aware that the conduct was being video taped and permitted [it]." JA 18. Ms. Culver had absolutely no history with child pornography and there was no dispute that, but for Sensi, neither the abuse nor the filming of the abuse would have taken place. *See* JA 35, 38 (Ms. Culver "was seduced by a super seducer" and she was "as much a victim as she was a perpetrator"). Because this was not a possession, receipt, or distribution of pornography case (where arguably technology *is* playing a role in terms of making child pornography infinitely more accessible), Facebook, as the district court put it, or "the role of technology" as the

---

[1]Moreover, any increase in child pornography *prosecutions*, as opposed to actual incidences of child pornography *production*, is of no relevance as the two are not necessarily connected. The United States Department of Justice's Fact Sheet: Project Safe Childhood merely describes the efforts of law enforcement to combat all crimes involving child pornography (there has been a corresponding increase in *prosecutions*) but nowhere in the Sheet does it cite statistics on whether child sexual abuse and child pornography production have increased with advances in technology. In fact, as mentioned elsewhere in this brief, the statistics show the opposite.

government puts it, had nothing to do with this case and thus has no bearing on the offense conduct's seriousness. Similarly, any effort by the government to describe the court's repeated Facebook comments as providing background for the reasons why the Sentencing Commission dramatically raised the Guidelines range for production of child pornography (as reflected in the ranges set forth in the 2001 Manual compared to the 2011 Manual) is equally unavailing as there was completely no evidence presented at the hearing, in the PSR, or in the government's memorandum, to indicate that the Guidelines were changed to respond to the role that technology has allegedly been playing in child pornography *production*.

As for the issue of general deterrence, the issue at sentencing was what kind of sentence would deter other similarly situated women who might contemplate allowing (and participating in) the abuse of their child in order to maintain a relationship with a pedophile. Current and future pedophiles should consider Sensi's sentence of 85 years when contemplating producing child pornography but the issue of general deterrence in Ms. Culver's case required a comparison of her specific conduct (with no connection to social media or technology) and those similarly situated who might contemplate doing what she specifically did (abuse their child while being filmed and directed by the leader of the offense). Put another way, a child pornography possessor or trader (for example, someone who might be using a technologically up-to-date computer with a fast internet connection) is unlikely to be deterred by Ms. Culver's sentence because he would say to himself, "that is not what I am doing, I did not abuse anyone." Instead, if general deterrence works at all, the child pornography possessors or traders will contemplate sentences handed down for

that specific type of offense and not for a woman who allowed her boyfriend (and herself) to sexually abuse her child.[2]

In fact, despite the government's claim (in an effort to justify the court's unfounded factual assertions) that child pornography production has risen in recent years, studies have shown that child sexual abuse has steadily decreased since the early 1990's, the exact time period when advances in technology involving computers and the internet have dramatically increased. *See Fourth National Incidence Study of Child Abuse and Neglect (NIS-4): Report to Congress*, U.S. Department of Health and Human Services et al., http://www.acf.hhs.gov/sites/default/files/opre/nis4_report_congress_full_pdf_jan2010.pdf at 3-4; 9-1 (**between 1993 and 2005, the number of sexually abused children dropped 38 percent**; the decline in sexual abuse is "consistent with trends in CPS data gathered by the National Child Abuse and Neglect Data System (NCANDS, U.S. Department of Health and Human Services, Administration on Children, Youth and Families, 2007)") (emphasis added); Troy Stabenow, *A Method for Careful Study: A Proposal for Reforming the*

---

[2]The government misunderstands one of defense counsel's arguments at sentencing by stating that defense counsel argued that there were not many cases involving production of child pornography. Gov't Br. at 27, citing JA 35. During that portion of the sentencing hearing, defense counsel began to discuss, when considering the need to avoid unwarranted sentencing disparities, the fact that there were only a few other cases in the District of Connecticut with similar facts, namely cases where a mother had allowed (and participated in) her daughter's abuse, while that abuse was being filmed. *See* JA 35-36. Thus, defense counsel was not arguing (when he said "thank God there aren't many") that there were not many cases in general involving production of child pornography but that there were not many cases where a woman was charged with production of child pornography involving her own child. *See id.* So when the court responded and specifically linked Facebook to why there would be more and more of "these cases" the court (and now the government) are blending all cases involving child pornography together and using unsubstantiated, irrelevant facts to justify an enhanced sentence.

*Child Pornography Guidelines*, 24 Fed. Sent'g Rep. 108, 121 (2011) ('rates of child sexual abuse have declined substantially since the mid-1990s, a time period that corresponds to the spread of CP online . . . there has not been a spike in the rate of child sexual abuse that corresponds with the apparent expansion of online CP') (quoting Janis Wolak et al., *Child Pornography Possessors, Trends in Offender and Case Characteristics*, 23 Sexual Abuse 22, 23 (2011).[3]

In short, the district court, and now the government in an effort to justify the court's error, lumps all child pornography offenses together and cites technology as having a connection to the instant offense, as well as future child pornography production cases (versus possession or distribution cases) when none exists. Accordingly, the court erred by articulating the dangers of Facebook as an important consideration when evaluating the seriousness of the offense and general deterrence, and there is a reasonable probability that the court sentenced Ms. Culver to two additional years of imprisonment as a result of its error. *See* JA 55 ("I would be very tempted to go, as Judge Burns did [in the *Dambro* case], to a sentence of six years, but I'm persuaded by the Government's arguments, that what's happened here in the last few years especially [i.e., Facebook], is very important, on the seriousness of the crime. So I'm sentencing to eight years . . ."); JA 63-64 ("I think as [the government] emphasize[s], it's not specific deterrence, what we're looking at is general deterrence, and the general deterrence is very important, and frankly, that's why I went to eight instead of six. **I was really considering, very strongly, six**, but

---

[3]Tellingly, the government states in its brief that "given the *potential* increase in child pornography production cases [due to the "increasingly important role of technology in these crimes"], general deterrence was a fully proper consideration for the court." Gov't Br. at 27. The use of the word "potential" here is indicative of speculation.

[the government] persuaded me that maybe eight is appropriate for the seriousness of what we're doing here.").

### B. The error is plain

Error is plain when it is clear or obvious under current law at the time of appellate consideration. *Johnson v. United States*, 520 U.S. 461, 476-68 (1997). Because the law in this Circuit has been settled that sentencing decisions that rely on erroneous facts, or facts unsupported in the record, produce procedurally defective sentences, the error here was clear and obvious. *See Gall*, 552 U.S. at 51 (Procedural error occurs when the district court selects a sentence "based on clearly erroneous facts."); *Cossey*, 632 F.3d at 88 ("[i]t is uncontroversial to conclude that a sentencing decision that relies on factual findings that were unsupported in the record, and thus could not possibly have been established by a preponderance of the evidence, seriously affects the fairness, integrity, and public reputation of judicial proceedings").

### C. The error affected substantial rights, namely the length of the sentence imposed

The test is whether there is "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 81-82 (2004). Here, there is clear evidence of a reasonable probability that the court sentenced Ms. Culver to more time based on its characterization of the evils of Facebook. Facebook (or social media sites, or technology) was central to its analysis of general deterrence and the seriousness of the offense. The government tries to minimize the court's reliance on its perceived ills of Facebook by calling its comments "passing references" but the court repeatedly returned to Facebook – six times to be exact

-10-

– and directly linked the social media site to its analysis of the seriousness of the offense and general deterrence. *See* JA 37 ("*Facebook* is one of the worst things . . . that's ever come down the pike;" "parents will have great difficulty in controlling access and limiting access to them because of *Facebook*;" "I hope this guy who invented *Facebook* is enjoying all his money"); JA 59 ("*Facebook* is a terrible example of it, but there are a lot of good examples of technology"); JA 47-48 ("[w]hat the court is influenced by, and I think I'm entitled to be influenced by that in my consideration of what's happened since 2001, is *Facebook*, and things like it"); JA 166 ("but I think you're right in pointing out that 2011 shows that what's happened since, and how bad it's become. In fact, with *Facebook* it's going to get worse, not better") (emphasis added).

Indeed, there is a reasonable probability that the court's analysis linking the instant offense to the evils of Facebook resulted in a sentence two years longer than otherwise would have been handed down. *See* JA 55 ("I would be very tempted to go, as Judge Burns did [in the *Dambro* case], to a sentence of six years, but I'm persuaded by the Government's arguments, that what's happened here in the last few years especially [i.e., Facebook], is very important, on the seriousness of the crime. So I'm sentencing to eight years . . ."); JA 63-64 ("I think as [the government] emphasize[s], it's not specific deterrence, what we're looking at is general deterrence, and the general deterrence is very important, and frankly, that's why I went to eight instead of six. **I was really considering, very strongly, six**, but [the government] persuaded me that maybe eight is appropriate for the seriousness of what we're doing here.") (emphasis added). Accordingly, the court's plain error affected Ms. Culver's substantial rights as there is a reasonably probability that she received an additional two

years' imprisonment as a result of the court's error. *See Cossey*, 632 F.3d at 88 ("The court's belief that Cossey was genetically incapable of controlling his urges affected the court's decision to sentence him to imprisonment, to impose a prison term that is lengthy, and to order him to submit to supervised release for life, all of which affect Cossey's substantial rights.").

D. **The error seriously affects the fairness, integrity or public reputation of judicial proceedings**

This Court has stated that "we may exercise our discretion to notice the plain error if we conclude that the error in this case seriously affected the fairness or the integrity or the public reputation of judicial proceedings." *United States v. Thomas*, 274 F.3d 655, 671 (2d Cir. 2001) (*en banc*). As this Court stated in Cossey, "[i]t is uncontroversial to conclude that a sentencing decision that relies on factual findings that were unsupported in the record, and thus could not possibly have been established by a preponderance of the evidence, seriously affects the fairness, integrity, and public reputation of judicial proceedings." Cossey, 632 F.3d 82, 88 (2d Cir. 2011). Like in *Cossey*, here too, the sentencing court relied on factual findings that were unsupported in the record, namely that Facebook will make the crime of child pornography *production* more serious and more prevalent thus requiring a longer sentence to reflect the more serious nature of the offense and deter others who will be tempted to use social media (or other advances in technology) to create child pornography. Not only was the court's theory unsupported in the record, but it was incorrect according to government studies; as stated, there has been a decrease in child sexual abuse as technological advances have increased. It is thus logical to assume that with those decreases, there would be less production

of child pornography not more. The district court's sentencing decision under these circumstances seriously affects the fairness, integrity, and public reputation of judicial proceedings and this Court should order a remand for a new sentencing hearing.

## CONCLUSION

For the foregoing reasons, Ms. Culver respectfully requests that this Court remand this case for re-sentencing.

>Respectfully submitted,
>
>THE DEFENDANT-APPELLANT,
>LAURA CULVER
>
>TERENCE S. WARD
>FEDERAL DEFENDER

Dated: December 10, 2012        /s/ Ronald B. Resetarits
Ronald B. Resetarits
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Phone: (203) 498-4200
Bar no.: ct26519
Email: ronald.resetarits@fd.org

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that two copies of the foregoing Reply Brief have been mailed to Krishna Patel, Assistant United States Attorney, United States Attorney's Office, 1000 Lafayette Boulevard, 10th Floor, Bridgeport, CT 06604 on this 10th day of December 2012.


        /s/ Ronald B. Resetarits
        Ronald B. Resetarits
        Assistant Federal Defender

**CERTIFICATION PER FED. R.APP. P. 32(a)(7)(C)**

  This is to certify that the foregoing brief complies with the 7,000 word limitation requirements of Fed. R. App. P. 32(a)(7)(B), in that the brief is 3,477 calculated by the word processing program to contain approximately words, exclusive of the Table of Contents, Table of Authorities and this Certification.

Dated: December 10, 2012

            /s/ Ronald B. Resetarits
            Ronald B. Resetarits
            Assistant Federal Defender
            Attorney for Laura Culver